# Richmond.

## HAYNES v. COMMONWEALTH.

### December 14, 1905.

1. BRIBERY—*Policeman an Executive Officer—Code, Sec. 3744.*—A policeman is an executive officer within the meaning of Code, Sec. 3744, making it a felony to offer any gift or gratuity "to any executive, legislative, or judicial officer." This section embraces all inferior executive officers, whose duties are for the most part ministerial. The most important powers and duties of a policeman—to execute the laws—are executive, though if they were chiefly ministerial, he would still be within the meaning of the statute.

2. EVIDENCE—*Admissibility—Bribery—Collateral Matters.*—On an indictment for attempting to bribe an officer by offering to pay him a sum of money to release the accused and drop the case, it is not admissible to show that a young girl had been given whiskey to drink, and had had intercourse with a man at the house of the accused the previous night. Such evidence is entirely collateral to, and has no connection with, the alleged attempt to bribe the officer.

3. CRIMINAL LAW—*Admitting Illegal Evidence—Effect—Prejudice.*—It an accused may have been prejudiced by illegal evidence, even although it is doubtful whether he was or not, a judgment on a verdict of conviction should be reversed.

Error to a judgment of the Hustings Court of the city of Richmond, on indictment for attempt to bribe.

*Reversed.*

The opinion states the case.

*Wise & Watkins,* for the plaintiff in error.

*Attorney-General Wm. A. Anderson,* for the Commonwealth.

Harrison, J., delivered the opinion of the court.

The plaintiff in error was convicted in the Hustings Court of the city of Richmond for the statutory crime of bribery. While under arrest for keeping and maintaining a disorderly house, resorted to for immoral purposes, she offered John H. Tyler, a police officer of the city of Richmond, twenty-five dollars if he would agree to drop and dismiss the proceeding against her.

The indictment was found under section 3744 of the Code, which is, so far as material, as follows:

"If any person give, offer or promise . . . any gift or gratuity to any executive, legislative, or judicial officer, . . . . . with intent to influence his act, vote, opinion, decision, or judgment, on any matter, question, cause or proceeding which is or may be then pending, or may by law come or be brought before him in his official capacity, he shall upon conviction be confined in the penitentiary not less than one nor more than ten years."

It is contended on behalf of the accused, that a police officer is not such an officer as was contemplated by section 3744 of the Code—that he is not an "executive" but a purely ministerial officer.

A policeman is a State officer, (*Burch* v. *Hardwick,* 30 Gratt. 24, 32 Am. Rep. 640) and we are of opinion that the statute was designed to embrace such an officer within its terms. In the triple classification employed by section 3744, the term "executive officer" is not limited in its application to the chief magistrate of the Commonwealth, but embraces as well inferior executive officers, whose duties are for the most part ministerial

In Throop on Public Officers, section 23, the author, quoting from Judge Cooley, says: "The duties imposed upon the of-

ficer are supposed to be capable of classification under one of these heads: the legislative, executive, or judicial; and to pertain accordingly to one of the three departments of government designated by those names. But the classification cannot be very .exact, and there are numerous officers who cannot be classified at all under these heads. The reason will be apparent if we name one class as an illustration. Taxing officers perform duties which in strictness are neither executive nor judicial, though in some particulars they must execute the orders of superiors, and others they judge for themselves what is to be done; but sometimes, also, their duties partake of the legislative. All such officers are usually called administrative, while inferior executive officers are designated ministerial."

In the light of this authority, a ministerial officer is an executive officer, and is included within the class embraced by that term, though he may be regarded as an inferior executive officer. A policeman is not, however, a purely ministerial officer. His general duties are defined by clause (1) of sec. 1017a, Va. Code, 1904, as follows: "The officers and privates constituting the police force of the cities and towns of the Commonwealth of Virginia shall be, and they are hereby, invested with all the power and authority which now belong to the office of constable at common law in taking cognizance of, and enforcing, the criminal laws of the Commonwealth, and the ordinances and regulations of the city or town, respectively, for which they are appointed or elected and it shall be the duty of each and every one of such policemen to use his best endeavors to prevent the commission within the said city or town of offenses against the laws of said Commonwealth, and against the ordinances and regulations of said city or town; to observe and

enforce all such laws, ordinances and regulations; to detect and arrest offenders against the same; to preserve the good order of said city or town, and to secure the inhabitants thereof from violence and the property therein from injury."

Some of the duties here prescribed are ministerial, but many of them are in a high degree executive. It is the chief duty of a policeman to execute the laws of the Commonwealth, both for the punishment and prevention of crime; indeed his most important powers and duties are executive. But if his functions be regarded as chiefly ministerial, he comes within the reason, letter and meaning of the statute, which makes it a felony to offer a bribe to any executive officer of the Commonwealth to influence his act; for, as already said, public officers whose duties are ministerial are included under the head of "executive officers." It cannot be supposed that the Legislature intended that the crime denounced by section 3744 of the Code, could be committed with impunity by those executive officers whose duties may be defined as being chiefly or entirely ministerial. Such a construction would exclude from the operation of the statute a large number of the public officers of the Commonwealth.

Bills of exception Nos. 1 and 2 are to the action of the court in permitting certain questions to be asked the witness, Alma Goddin, and answered by her against the protest of the prisoner.

Alma Goddin was fourteen years old, and was one of two small girls who were found in the house if ill-fame kept by the accused. This witness was asked and answered the following questions:

"State whether or not you went upstairs with a man."

Ans. "Yes, sir, she made me go up there."

"You say they gave you something to drink?"

Ans. "Yes, sir, after I got up there."

"Tell whether the man had intercourse with you, or something to do with you, on Thursday night."

Ans. "Yes, sir."

The indictment in this case was for the crime of bribery, and at the time of trial there was pending against the accused another proceeding, charging her with having abducted Alma Goddin.

It is a well settled rule of law that the evidence must be confined to the matter in issue. The facts laid before the jury must consist exclusively of the transactions which form the subject of the indictment, for it is these alone that the prisoner can be expected to have come prepared to answer. *Trogdon* v. *Commonwealth*, 31 Gratt. 862; *Moore* v. *City of Richmond*, 85 Va. 538, 8 S. E. 387.

Evidence of collateral facts is generally inadmissible because it tends to draw away the minds of the jury from the point in issue, and to excite prejudice and mislead them. There are exceptions to this rule, as in cases where the intent or guilty knowledge of the party accused is a material ingredient in the issue of the case. In such cases collateral facts—that is, other acts and declarations of a similar character—tending to establish such intent or guilty knowledge, are admissible, provided they are not too remotely connected with the offense charged. *Trogdon's Case, supra; Bottomley* v. *U. S.* 1 Story, 135.

The collateral fact that Alma Goddin had been given whiskey to drink, and had had intercourse with a man at the house of the prisoner the previous night, had no connection with the alleged attempt to bribe the officer. These are not acts of a similar nature or character, and they do not tend to prove that a bribe was offered with intent to influence the officer. The intent to influence the act of the officer had been shown by clear proof of the offer of $25.00 if he would release the ac-

cused and drop the case, and the introduction of the evidence here objected to could only have had the effect of prejudicing the minds of the jury, and causing them to heighten the punishment for the crime of bribery with which the plaintiff in error stood charged.

If the accused may have been prejudiced by the evidence, even though it be doubtful whether in fact she was so or not, it is sufficient for reversing the judgment. *Trogdon's Case,* *supra.*

For these reasons the judgment of the Hustings Court must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

CARDWELL, J., concurs in results.

*Reversed.*