# CHARLESTON.

## WEIL v. BLACK, JUDGE.

Submitted September 8, 1915.   Decided October 5, 1915.

1. PROHIBITION—*Right to Remedy—Want of Jurisdiction—Inferior Court.*

    Prohibition lies, as a matter of right, in all cases where the inferior court has not jurisdiction of the subject matter in controversy, and it is not essential to the right to apply for the writ, that the question of jurisdiction should first have been presented to, and passed on by such inferior court; or, that the petitioner has not come other adequate remedy. (p. 687).

2. SAME—*Want of Jurisdiction—Determination.*

    In determining whether an inferior court has jurisdiction to entertain an indictment, it is only necessary to determine whether the transactions and circumstances therein alleged show that an offense, punishable under the law, has been committed. The technical sufficiency of the indictment will not be inquired into, as if upon a demurrer or motion to quash, to determine jurisdiction. (p. 688).

3. BRIBERY—*"Executive Officer"—Public Service Commission.*

    Members of the public service commission are executive officers within the meaning of Sec. 5a, Ch. 147, Code 1913, making it a felony to attempt to bribe any executive or judicial officer of the state, or any member of the legislature, by offering or proposing to give him money, testimonial, or other valuable thing, in order to influence him in the performance of his official or public duties. (p. 691).

4. SAME—*Elements of Offense—Official Action.*

    To constitute the offense of attempted bribery, it is immaterial whether the official action thereby sought to be influenced was officially right or wrong. (p. 691).

5. CRIMINAL LAW—*Principal and Accessory—Distinction—Abolition.*

    Secs. 6 and 8, Ch. 152, Code 1913, in effect, abolish the common law distinction between an accessory before the fact and a principal

felon, by making such accessory, in every felony, punishable as if he were the principal in the first degree, and punishable in the county in which the principal felon might be indicted. (p. 693).

6. SAME—*Venue—Commission of Offense—Offer by Agent.*

A person who, without the state, counsels and procures a responsible agent to offer money to a public officer within the state, in order to influence him in the discharge of his public and official duties, is guilty of a felony under the law of this state, and is punishable in the county where the agent made the offer. (p. 693).

7. CORPORATIONS—*Public Service Commission—Rate Regulations—Enforcement—Duty of Commissioners.*

Where the public service commission has, upon proper evidence and after due consideration, made an order prescribing certain rates to be charged for services to be rendered by a public service corporation, it is the official duty of the individual members of such commission to compel obedience to such order, if it be not obeyed, by instituting proper proceedings in court. (p. 695).

8. BRIBERY—*Corporations—What Constitutes—Public Service Commission.*

And if, before instituting such proceeding, the individual members thereof should be sued in their official capacity, in any court having jurisdiction, for the purpose of having the enforcement of their order enjoined, and the same declared null and void, it then becomes their official duty to make defense thereto, by all proper and lawful means; and an offer to give money to one of them in order to induce him to give testimony in such case, whether such testimony be true or false, is an attempt to influence a public officer in the performance of his official duty. All the acts of such public service commissioner to be performed in relation to such suit, whether employing counsel, procuring evidence or giving personal testimony, are official, and not private or personal acts. (p. 695).

9. CRIMINAL LAW—*Jurisdiction—State and Federal Courts.*

The jurisdiction of an offense by the state court is not impaired by the fact that the same transactions may constitute a distinct offense punishable under federal statutes. (p. 697).

10. BRIBERY—*Attempted Bribery of Public Officers—Defenses:*

It is no defense to an indictment for attempted bribery of a public officer, that he was not a *de jure* officer; his official character can not be thus collaterally assailed; it is sufficient that he was a *de facto* officer. (p. 697).

Error to Circuit Court, Kanawha County.

Prohibition by A. Leo Weil against Hon. H. K. Black,

Judge, etc. Judgment for plaintiff, and defendant brings error.

*Reversed, and rule in prohibition discharged.*

*T. C. Townsend* and *S. B. Avis,* for plaintiff in error.

*P. C. Knox, Price, Smith, Spilman & Clay, J. H. Gaines, Conley & Johnson, McCamic & Clarke, M. F. Matheny, Adam B. Littlepage, Malcolm Goldsmith* and *L. Pearson Scott,* for defendant in error.

WILLIAMS, JUDGE:

Four indictments were found by a grand jury at the January term, 1915, of the intermediate court of Kanawha county, against defendant in error, two of which purport to charge him, as accessory before the fact, with two several felonious attempts to bribe two designated public officers, members, respectively, of the public service commission of West Virginia, and two, with an unlawful attempt to bribe the same officers.

Following the indictments, defendant in error appeared and gave bond for his appearance in court on the 10th of March, 1915, to answer same. Thereafter, on the 24th of February, and without having answered, or challenged the sufficiency of the indictments, or the jurisdiction of said court, he presented his petition to the circuit court of Kanawha county, praying for a writ of prohibition against the Hon. Henry K. Black, judge of said intermediate court. A rule was awarded thereon returnable on the 5th of March, 1915, summoning said judge to appear and show cause, if any he could, why he should not be prohibited from entertaining jurisdiction of the indictments. The judge appeared by counsel, demurred to the petition and moved to quash the rule, and, after hearing arguments of counsel thereon, the circuit court overruled the motion and demurrer and awarded the writ as prayed for. The reversal of that final order is sought by this writ of error.

Counsel for plaintiff in error deny that prohibition is an available remedy in the premises. They insist that the question of jurisdiction should first have been raised in the intermediate court, and there decided adversely to defendant

in error, before he had any right to apply for prohibition. Such is not the law of this state. Sec. 1, Ch. 110, Ser. Sec. 4518, Code 1913, reads in part as follows: "The writ of prohibition shall lie as a matter of right, in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or having such jurisdiction, exceeds its legitimate powers."

Before the statute was amended in 1882, by the addition thereto of the language above quoted, Judge GREEN, a learned and able lawyer and jurist, expressed his view concerning the remedy by prohibition as follows: "The true position, I understand, is that where on the face of the proceedings the inferior court not only has not jurisdiction and the parties cannot by consent or waiver give the court jurisdiction, it may be prohibited from proceeding, though the record does not show that the party praying for the petition, either by motion or suggestion in any manner asked the inferior court to dismiss the proceedings." *Swinburn* v. *Smith,* 15 W. Va. 483, 499. That rule was applied in the following cases: *Judy* v. *Lashley,* 50 W. Va. 628; *Morley* v. *Godfrey, Mayor,* 54 W. Va. 54; *N. & W. R. Co.* v. *Pinnacle Coal Co.,* 44 W. Va. 575; *City of Charleston* v. *Littlepage, J.,* 73 W. Va. 156. True, some of our decisions do hold that a challenge of jurisdiction in some manner, in the lower court, is a condition precedent to the right to apply to this court for the writ. See, *Board of Education* v. *Holt,* 51 W. Va. 435, and *Jennings* v. *Judge,* 56 W. Va. 146. But it is not an inflexible and arbitrary rule of procedure, and, when this court has applied it, it has only done so as a matter of judicial courtesy to the court sought to be prohibited. *City of Charleston* v. *Littlepage, J., supra,* and cases cited in opinion, at pages 159 and 160. Indeed, in view of the statute, giving the writ, "as matter of right," we do not see how such a rule can be justified in any case where it is proper to be issued at all. Prohibition is a remedy given as matter of right, and may be resorted to regardless of the existence of some other remedy. A defendant has the right to elect to pursue it rather than some other remedy he may have.

That the intermediate court is entertaining jurisdiction of the indictments appears from its order requiring bond for the

appearance of defendant in error to answer them on a day fixed. If it is without jurisdiction it had no right to require him to appear. In determining the question of jurisdiction it is only necessary to ascertain whether the transactions averred in the indictments, or in any one of them, constitute an offense against the laws of West Virginia. If they do, then the intermediate court had jurisdiction to hear and determine all matters of law arising thereon, and to try the causes in the manner provided by law for the trial of criminal cases. With the technical defects, if any, in the indictments we are not concerned upon this appeal. Those are questions which the intermediate court should pass on in the first instance, if it has jurisdiction in the premises. We are not reviewing the indictments as if upon writ of error to a judgment of conviction. The question we have to decide is, do the indictments allege such matters as show that an offense has been committed, regarding the allegations as true? The indictments are very lengthy, each one occupying about sixty eight printed pages, and it is needless to encumber the reports with a full quotation of any one of them. Two of them purport to charge felonies, and two misdemeanors; and each one of them contains two counts. The matters averred in each are the same, except the name of the officer to whom the offer of money is alleged to have been made. Hence, the substance of one will serve to determine the question of jurisdiction.

Stripped of technical verbiage and reduced to simpler form, one of the indictments, purporting to be for a felony, charges, in substance, as follows: That the public service commission of West Virginia had under investigation certain rates and charges for natural gas, established by the Manufacturers Gas Company, a public service corporation, and seven other named subsidiary gas companies, to become effective on May 21, 1913, in order to ascertain whether said rates were excessive and discriminatory, or were just and reasonable; that on the 22nd of April, 1914, after investigation and hearing, said public service commission lawfully made, entered and promulgated a final order, prescribing a schedule of rates and charges for each of said gas companies, which were to be effective on and after May 1, 1914, and declared it to be reasonable and just, (the indictment incorporating *in haec*

*verba* the final order and schedules prescribed); that it was the official duty of the several members of the public service commission, four in number, whose names are mentioned in the indictment, to uphold, maintain, and proceed to enforce said final order; that the aforesaid gas companies thereafter brought a suit in equity, in the District Court of the United States for the Northern District of West Virginia, against the public service commission and its several members, praying to have the aforesaid order declared void, and the enforcement of it enjoined; that on the 29th of July the said United States District Court denied the prayer of the bill, and decreed that the rates fixed by the public service commission should be effective from the time fixed in its order; that complainants in the bill appealed from that decree to the Supreme Court of the United States; that, pending said appeal defendant in error "did, on the 24th of October, 1914, in the city of Pittsburg, state of Pennsylvania, counsel, aid, abet, procure, hire and command" Charles D. Elliott, who knew of the pendency of said suit and the matters in litigation therein, to offer as a bribe to Charles H. Bronson, whom said Elliott knew to be a member of the public service commission, ten thousand dollars, to induce and influence him, as a member of such public service commission "to duly testify, depose, swear, make oath and give evidence (in some way, shape, manner and form to the grand jurors unknown)," in said pending suit, to the following effect, viz.: that the investigation and hearing by the public service commission was inadequate and unfair, because it was made in subservience to the will of the governor of the state of West Virginia, who summoned the members of said public service commission to his office, and "issued a flat ultimatum," that the several gas companies named "must not be permitted to increase their respective rates, and that, unless a decision to that effect was made within twenty four hours" by them, their respective resignations should be on his desk at the end of that time, "in order that, and so that, and with the intent that" the aforesaid final order of the public service commission should be declared void, and its enforcement enjoined by the Supreme Court of the United States in the suit then pending.

The second count of this indictment is identical with the

first, except that it alleges the suit was pending in the United States District Court instead of in the. United States Supreme Court.

If those transactions constitue an offense against the law of the State, the intermediate court had jurisdiction, whether the indictments are in proper legal form or not, and the circuit court erred in awarding the writ; but, if they do not constitute an offense, then the writ was properly issued.

First, then, let us see what the law of this State is respecting the offering, and procuring another to offer money to an officer in order to influence him in the performance of his official duties, for that is what the indictment purports to charge, and it certainly does not indicate that any other offense was committed against the State law. Sec. 5a, Ch. 147, Ser. Sec. 5250, Code 1913, reads as follows:

"II. That any person attempting to bribe, by offering or proposing to give any executive or judicial officer of this State, or any member of the legislature, money, testimonial, or other valuable thing, in order to influence him in the performance of his official or public duties, shall be deemed guilty of felony, and, upon conviction thereof, shall be imprisoned in the penitentiary for not less than one year nor more than three years, and shall moreover be forever disqualified from holding any office or position of honor, trust or profit in this State."

Members of the public service commission are included in the descriptive terms of the above statute, "any executive or judicial officer." Those are general terms, intended to include all public officers whose duties are either judicial or executive. The term "executive" is not there limited to the officers enumerated in Sec. 1, Art. VII of the Constitution, as constituting the executive department of the state government, but it is designed to embrace all officers, whether elected or appointed, whose duties pertain to that branch of the government. Being public officers, whose jurisdiction extends over the whole state, it necessarily follows from the apportionment, by the Constitution, of all the powers of government among three departments, denominated therein as the legislative, the executive and the judicial departments, that the duties of all public officials must fall within some one of those

76 W. Va.

three departments. A fourth department, having powers distinct from the three named, could constitutionally exist. That the public service commissioners are not included in the terms, "members of the legislature," must be admitted; that they are included in one or the other of the terms "executive or judicial officers," we think is clear, and it is sufficient, for the purposes, of this writ of error, to class them under the head of executive officers. If their duties are so varied that some of them may properly be classed as executive or ministerial, and others as judicial, they could, for purposes of the bribery statute, be classed under either of the two departments. In so far as they are empowered to investigate rates and charges of public service corporations, and to determine their reasonableness or unreasonableness, they would seem to be performing a *quasi* judicial function, while, in ascertaining what is a just rate for services to be rendered by such corporations, and prescribing such rate, as a rule to be obeyed in the future, their action would seem to partake somewhat of a legislative character; and in compelling obedience to its orders, by proper proceedings in court, as Sec. 5 of the act creating it requires it to do, its duties are ministerial, coming clearly within the functions of the executive department of government.

A Michigan statute, making the bribing of "any executive, legislative or judicial officer" an offense, was construed by the supreme court of that state to apply to municipal officers, the character of whose duties falls within the meaning of any of those terms, that court holding, "that a construction which would take cities and other public corporations out of the protection of those laws, would be dangerous and unnatural." *People* v. *Swift,* 59 Mich. 529, and *People* v. *Salisbury,* 134 Mich. 537, 96 N. W. 936. A like construction and application was made of the same terms used in a similar Texas statute, which were held to embrace within their meaning an assistant county attorney. *Davis* v. *State,* 70 Tex. Crim. App. 524, 158 S. W. 288. A police officer of the city of Richmond, Virginia, was held to be an executive officer within the meaning of a statute making it a felony to offer any gift or gratuity to "any executive, legislative or judicial officer," the court saying that, all inferior executive officers, whose duties are

for the most part ministerial are included in the statute. *Haynes* v. *Commonwealth,* 104 Va. 854.

The indictment, the substance of which we have above stated, purports to charge defendant in error, as being accessory before the fact, and it is contended that, inasmuch as the indictment avers his accessorial acts to have been committed without the state and consummated within it, by a responsible agent, he is not punishable by the laws of this state. That might be true were it not for our state statutes. Secs. 6 and 8, Ch. 152, Ser. Secs. 5463 and 5465, Code 1913, read as follows:

"6. In the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree, and every accessory after the fact shall be confined in jail not more than one year, and fined not exceeding five hundred dollars."

"8. An accessory, either before or after the fact, may, whether the principal felon be convicted or not, or be amenable to justice or not, be indicted, convicted, and punished in the county in which he became accessory, or in which the principal felon might be indicted. Any such accessory before the fact may be indicted either with such principal or separately."

*State* v. *Ellison,* 49 W. Va. 71, holds Sec. 8 not to be unconstitutional because it provides that the accessory can be tried in the county where the principal might be indicted, although he did not therein counsel and advise the commission of the principal's act. The *locus in quo* of the accessory's crime is made the county in which the principal commits the felonious act; and that part of the statute which attempts to make the crime punishable in the place where the accessorial acts are committed, of course, can have no extra-territorial effect. But that does not prevent the accessory's act, wherever committed, from being tried where the felonious act is consummated; provided jurisdiction of his person be obtained. That an accessory is without the state when he counsels and procures the commission of a felony within the state, makes it none the less an offense against the laws of this state, if the principal's act be committed therein.

"A party who in one jurisdiction puts in operation a force which does harm in another jurisdiction is responsible in both jurisdictions for the harm." 1 Wharton's Crim. Law, Sec. 324.

"The doctrine that a resident of one state who procures a felony to be committed in another state, by a guilty agent, without being personally present to assist in the commission of the offence, cannot be punished in the state where the offence is committed, has never been recognized by our courts, is inconsistent with our system of jurisprudence, does not rest on any just foundation, tends to encourage the commission of crime, and should be repudiated generally." *State* v. *Grady,* 34 Conn. 118. To the same effect, see the following cases: *Comomnwealth* v. *Macloon,* 101 Mass. 1; *Commonwealth* v. *Pettes,* 114 *Id.* 307; and *Commonwealth* v. *Chiovaro,* 129 *Id.* 489.

In view of our statutes respecting attempts to bribe public officers, the proposition contended for by the distinguished counsel for defendant in error can not be sustained. Those statutes practically abolish the common law distinction between principal and accessory before the fact, by making him "punishable as if he were the principal in the first degree," and "in the county in which the principal felon might be indicted." The cases, cited and relied on by counsel in support of their proposition, are from states where the common law distinction between an accessory before the fact, operating through a guilty agent, and the party actually committing the felony, is still observed. They have no statutes similar to ours. See, *State* v. *Wycoff,* 31 N. J. L. 65; *Tulley* v. *Commonwealth,* 13 Bush, (Ky.), 142; *People* v. *Hodges,* 27 Cal. 340; *State* v. *Moore,* 26 N. H. 448, 59 Am. Dec. 354; and *Johns* v. *The State,* 19 Ind. 421.

But it is held in all jurisdictions, where the English common law prevails, that, independent of statute, a person without the realm or state, who consummates a crime within it, by means of an innocent agent, is a principal in the first degree and punishable where the crime is consummated, such an one being considered, by a fiction of law, as present where the crime is committed. But, of course, that principle could have no application in this case, even in the absence of any statute,

because it appears from the very nature of the transactions alleged that the agent was not ignorant of them.

There is no lack of jurisdiction in the intermediate court of Kanawha county because the offense, which the indictments purport to charge, is alleged to have been committed in the state of Pennsylvania, when other averments show that the acts of the principal were consummated in Kanawha county, West Virginia.

The truth or falsity of the testimony, sought to be procured from the public service commissioner, is not averred, and counsel insist that the necessary inference is, that it was true. Wherefore, they say, no crime is alleged, because it is no violation of law to offer money to a witness to induce him to tell the truth, and that giving testimony is not a part of the official duties of members of the public service commission. They further contend that, if the evidence had been charged to be false, it would only have been subornation of perjury, a crime against the federal law, cognizable only in the federal court where the case was pending in which the evidence was to be used. Hence, they insist that, in no aspect does the indictment show a crime to have been committed against the laws of the state.

In order to determine what were the official duties of the public service commissioners in the premises, we must look to the statute creating said commission and defining its duties. Sec. 5 of that act makes it one of their duties to ''compel obedience to its lawful orders by proceedings in the name of the state in any circuit court having jurisdiction of the parties or of the subject matter, or the supreme court of appeals direct.'' The indictments allege that the order they had made, prescribing gas rates, was lawful. They were defendants to the bill, filed in the federal court for the purpose of preventing the enforcement of that order, and having it declared void. If the plaintiffs in that suit should succeed, the enforcement of their order would be rendered impossible. A proper defense of that suit by all lawful means, even to the extent of testifying, truthfully, as witnesses in the case, or of refraining from giving testimony, if such testimony should be fatal to their defense, was as much their official duty as it would have been to institute proceedings for the enforcement

of their order, in the event the plaintiffs in that suit had not sued to avoid it, but, instead, had obstinately refused to obey it. The suit was brought against them in their official capacity, to avoid and annul their alleged lawful order, and a successful defense of that suit is an indispensable prerequisite to the enforcement of their order. The duty to uphold and defend their lawful orders is clearly to be implied from their positive duty to compel obedience thereto.

We would not be understood as intimating that the discharge of a public official duty, or any other duty, ever requires a person to give false testimony, such is certainly not the law. But there is a vast distinction to be drawn between testifying falsely and not appearing as a witness. It was within the range of the official duty of the members of the public service commission to testify in that suit, but of course to testify truly, if in their opinion such action was necessary to a successful defense. The theory of a dual character, as witness and officer, in a suit involving official action, which the officer's duty requires him to defend, is untenable. Whatever he is lawfully required to do in such suit, and actually does, must be regarded as done in his official, and not in his private capacity, and in discharge of his public duty, whether it be to employ counsel, procure witnesses or give testimony. In the defense of such suit all the actions of the public service commissioners are official. Hence, an offer of money to any one of them, in order to induce him to give testimony, whether the testimony desired be true or untrue, is an attempt to influence him in the discharge of his official duty, and is made a felony by the statute.

If their order was in fact made under compulsion of the governor, without due and proper consideration of the evidence, and was unjust and unfair, as the evidence, which it is alleged defendant in error sought to procure, would seem to prove, it shows that the public service commission violated its official duty in making the order. But even if that be conceded, and we express no opinion concerning the charge, still it would be a violation of the statute to offer money to a member of said commission to induce him to correct the official wrong. Because the purpose of the offer is to influence official action, and it matters not, in applying the

bribery statute, that the result sought to be obtained is, in itself, right and consistent with the officer's duty, or wrong and in violation of it. *People* v. *O'Neil,* 48 Hun. 36, affirmed by the court of appeals in 109 N. Y. 251; and *Florez* v. *The State,* 11 Tex. 102.

That the circumstances alleged may also show a violation of the federal statutes is immaterial, and it is unnecessary to say whether they do or not. For the purposes of this case it is sufficient to know that they constitute a violation of the state law. It does not impair the jurisdiction of the state courts to punish an offense, because the same transactions may constitute a violation also of federal law. Revised Statutes of the United States, Sec. 5328; *Cross* v. *North Carolina,* 132 U. S. 124; *Crossley* v. *California,* 168 U. S. 640; *Sexton* v. *California,* 189 U. S. 319; and *Pearce* v. *State,* 115 Ala. 115.

Nor is it material to determine whether testimony can be taken to be read as evidence by the Supreme Court of the United States in a case therein pending on appeal. Rule XII of that court seems to indicate that it has power to require the taking of further evidence in certain classes of cases pending before it. But we are not called upon to decide this question, inasmuch as the second count of the indictment, the substance of which we have above given, alleges the case to be pending in the United States district court.

It is not necessary to say whether an attempted bribery of a public officer is a misdemeanor at the common law; or, if so, whether the common law in that respect has been abrogated by statute. These are matters which may properly be presented to the intermediate court, when it is called to determine the character and sufficiency of the several indictments. It is enough, for the purposes of this writ of error, to say that the indictments, purporting to be for felonies, allege circumstances and transactions, which, if true, constitute violations of the state statutes.

The contention that the indictment fails to show the jurisdiction of the public service commissioner to make the order, because it does not allege that their appointment was confirmed by the Senate and that, therefore, they were not officers, within the meaning of the statute, can not be sustained. They were at least *de facto* officers, and that is suf-

ficient to sustain the charge of an attempt to bribe one of them. *People* v. *Jackson,* 191 N. Y. 293, 15 L. R. A., (N. S.), 1173, and numerous cases cited in note to the same case, reported in 14 Am. & Eng. Anno Cases, 246.

Our conclusion is that the intermediate court of Kanawha county has jurisdiction, and we, therefore, reverse the judgment of the circuit court and quash the writ.

*Reversed, and rule in prohibition discharged.*