THE STATE OF OHIO, APPELLANT, *v.* HERRMAN, APPELLEE.

(No. 2631—Decided June 16, 1961.)

*Mr. Paul R. Young*, prosecuting attorney, for appellant.
*Messrs. White, Zimmerman & Coen*, for appellee.

SHERER, J.   This is an appeal on questions of law from an order of the Common Pleas Court of Montgomery County, Ohio, quashing an indictment returned by the grand jurors of Montgomery County against defendant, appellee herein, Jerome J. Herrman, a police officer of the city of Dayton, Ohio.

The indictment charges that Jerome J. Herrman, from January 29, 1960, through February 6, 1960, in the County of Montgomery and state of Ohio, did, by color of and in the execution of his office as a policeman of the city of Dayton, Ohio, willfully oppress one Harold Beaty, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Ohio.

Section 2919.12 of the Revised Code provides:

"No sheriff, coroner, constable, jailor, clerk, county recorder, county auditor, county treasurer, or other ministerial officer, or a deputy or subordinate of such officer, by color of or in the execution of his office shall willfully injure, defraud, or oppress another or attempt to do so."

The defendant moved to quash the indictment for the rea-

sons (1) that the indictment fails to charge a crime under the statutes of Ohio and (2) that the indictment alleges inconsistent allegations, to wit, that the defendant acted under "color of office" and in the "execution of his office."

The first question to be determined is whether a police officer of the city of Dayton is included among those officers mentioned in Section 2919.12, Revised Code, under the language "other ministerial officer." The history of this section of the Code reveals that it has been in existence essentially in its present form since 1831. No cases involving a prosecution of any public officer under the above section have been cited by the prosecuting attorney or by counsel for the defendant.

In 43 American Jurisprudence, 74, 75, Section 258, it is said:

"From their nature, the powers and duties of public officers are, in general, classified as ministerial and discretionary. * * *

"The character of a duty as ministerial or discretionary must be determined by the nature of the act to be performed, and not by the office of the performer. A similar rule is applied in determining whether a function is judicial, quasi-judicial, or ministerial. The duties are often blended in one officer. Thus, a judicial officer may act in a ministerial capacity, or a ministerial officer may exercise discretionary or judicial functions. Official duty is ministerial when it is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts; that a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in its nature. * * *"

The powers of government are divided among three departments, the legislative, the executive and the judicial. The officers who exercise such powers are classified as executive, legislative and judicial officers. 42 American Jurisprudence, 898, Section 24; 44 Ohio Jurisprudence (2d), 508, Section 20. In addition to these three classes of public officers, the law recognizes a fourth classification known as ministerial officers.

"* * * They are sometimes called executive officers, sometimes administrative, and sometimes ministerial, and with slight shades of distinction. What characterizes a ministerial officer is that he has no power to judge of the matter to be done, and

usually must obey some superior. His duties, in other words, are of a ministerial character. And a ministerial act may be defined to be one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done. There is scarcely a ministerial officer who does not, in the performance of some act required to be done, exercise a discretion quasi-judicial in nature, regarding which the act itself cannot rightfully be classed as ministerial. There is a marked distinction between a ministerial act or function when considered as an independent transaction, and the general nature of the office and the functions to be performed therein, which, when considered together, make the incumbent a ministerial officer. Whether, therefore, a person is or is not a ministerial officer depends not so much on the character of the particular act which he may be called upon to perform, or whether he exercises a judgment or discretion with reference to such act, as upon the general nature and scope of the duties devolving upon him. If these are of a ministerial character, then the person charged with their performance is undoubtedly a ministerial officer. The mere necessity for a ministerial officer to exercise judgment and discretion does not convert him into a judicial officer.

"An administrative officer is sometimes classed as a ministerial officer and vice versa. The word 'ministerial' is not infrequently used as synonymous with 'administrative,' and it seems that the two words are so closely allied in meaning that they may be employed interchangeably. Administrative officers may be regarded as in the nature of a subdivision of that class of officers which in a general way belongs to the executive branch of the government." 42 American Jurisprudence, 900, Section 29.

Supporting this definition, see, also, 44 Ohio Jurisprudence (2d), 509, Section 20.

In 46 Corpus Juris, 927, Section 8, it is said:

"Ministerial offices are those which give the officer no power to judge of the matter to be done and which require him to obey some superior. A ministerial officer has been defined as one whose duty it is to execute the mandates lawfully issued by his superiors. Whether a person is or is not a ministerial

officer depends not upon the character of the particular act which he may be called upon to perform or whether he exercises judgment or discretion with reference to such act, but whether the general nature and scope of the duties devolving upon him are of a ministerial character as distinguished from executive, legislative, or judicial.''

In Mechem on Public Officers it is said of ministerial officers:

''This class of officers is known by different names. They are sometimes called executive officers, sometimes administrative, sometimes ministerial, and with slight shades of distinction.''

''Ministerial'' is defined by Webster's International Dictionary as ''of the nature of those acts or duties belonging to the administration of the executive function.''

In the case of *Haynes* v. *Commonwealth*, 104 Va., 854, 52 S. E., 358, Haynes was charged with offering a bribe to a police officer of the city of Richmond in violation of the Code which provided that, ''If any person give, offer or promise * * * any gift or gratuity to any executive * * * officer * * * with intent to influence his act, * * * decision or judgment on any matter, question * * * he shall * * * be confined in the penitentiary.''

The Supreme Court of Virginia held that ''a police officer is an executive officer'' and in paragraph one of the syllabus held that:

''A policeman is an executive officer within the meaning of Code, Sec. 3744, making it a felony to offer any gift or gratuity 'to any executive, legislative, or judicial officer.' This section embraces all inferior executive officers, whose duties are for the most part ministerial. The most important powers and duties of a policeman—to execute the laws—are executive, though if they were chiefly ministerial, he would still be within the statute.''

We have examined the Digest of the laws relating to the question before us, which contains all reported cases in the country and we find cases reported from many states which are listed in the Digest under the title, Obstructing Ministerial Officers in the Performance of Their Duties. Many of these cases refer to police officers. Some of these cases construe code sections which contain the words, ''any peace officer,''

"any public officer," "any officer" and "any city officer." We have found only one case precisely in point. That is the case of *Drifoos* v. *City of Jonesboro*, decided by the Supreme Court of Arkansas and reported in 107 Ark., 99, 154 S. W., 196. In this case Drifoos was charged with obstructing a police officer of the city of Jonesboro in an attempt to arrest another. The section under which he was charged provided that, "If any person shall unlawfully and willfully resist any ministerial officer in the discharge of any official duty he shall be deemed guilty * * *."

The court held that a police officer is a ministerial officer within the meaning of that section.

In 38 Ohio Jurisprudence (2d), relating to Municipal Corporations, in Chapter VI, page 507, and succeeding pages, under the title, "Administrative Departments, Boards and Commissions," we find "Police Departments" included at page 513 in Section 148. The Ohio Constitution permits the exercise of the powers of local self-government through a charter, and, in the exercise of such power, the city of Dayton under the Charter may and does establish and operate a police department. The city may enact ordinances not inconsistent with the Constitution and laws of the state.

The Charter of the City of Dayton provides as follows:

"Charter—Section 51

"The following administrative departments are hereby established by this charter:

"* * *

"4. Department of Public Safety.

"* * *

"Section 69. Department of Public Safety.

"Subject to the supervision and control of the City Manager in all matters, the Director of Public Safety shall be the executive head of the 'division of police and fire' * * *.

"* * *

"Section 70. Division of Police.

"The Chief of Police shall have exclusive control of the stationing and transfer of all patrolmen and other officers and employees constituting the police force, under such rules and regulations as the Director of Public Safety may prescribe. The police force shall be composed of a Chief of Police and such officers, patrolmen, and other employees as the city manager may determine."

We have noted that by the definitions we have mentioned the words "administrative officer" and "ministerial officer" are often used synonymously; that "ministerial officers" are regarded as a subdivision of the term "executive officers." We have noted also that in Ohio Jurisprudence, in outlining the structure of our government, police departments are included under the title, "Administrative Departments, Boards and Commissions." We have noted, too, that the Charter of the City of Dayton creates the Division of Police in the Department of Public Safety which is characterized by Section 51 of the Charter as an *administrative department*.

Section 737.11 of the Revised Code defines the duties of police as follows:

"The police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority thereof, and all criminal laws of the state and the United States. * * *"

A police officer performs his duties under the direction of a superior. The defendant, Jerome J. Herrman, is a Sergeant of Police. He acts under the direction of a Lieutenant, a Captain, an Inspector, the Chief of Police, the Director of Public Safety and, finally, the City Manager. He enforces the law which is definite and certain as set out in the ordinances of the city of Dayton and the laws of the state of Ohio and of the United States. The manner in which he performs his duties is largely defined by statute and, while he has considerable discretion in the performance of his duties, the matters which lie within his discretion are determined for the most part by his superiors.

A consideration of the duties of the defendant in the light of the definitions and decisions we have enumerated leads us to conclude that a Sergeant of Police in the Police Department of the city of Dayton is a ministerial officer within the meaning of Section 2919.12 of the Revised Code, under which the defendant was indicted.

The defendant argues that the indictment contains inconsistent allegations. The indictment alleges that the defendant did, by color of and in the execution of his office as a policeman, willfully oppress one Harold Beaty. The section of the Code under which the indictment was drawn contains the language, "by color of or in the execution of his office."

It was held in the case of *Washburn* v. *Foster*, 87 Ga. App., 132, 73 S. E. (2d), 240, that "An officer's acts are done 'colore officii' when they are of such a nature that his official position does not authorize the doing of such acts, though they are done in a form that purports they are done by reason of official duty and by virtue of his office."

In the case of *Goforth* v. *Fidelity & Casualty Co. of N. Y.*, 80 Ga. App., 121, 55 S. E. (2d), 656, it is said that a "Petition alleging that sheriff and his deputy went to the home where plaintiff was lying in with her six day old baby and pretended to her that they had official right to take her baby from her, though they had no such right, and that sheriff told plaintiff that he had a possessory warrant for the baby, and that then sheriff and his deputy proceeded to take baby forcibly from plaintiff alleged acts done by the sheriff and the deputy under 'color of office,' so as to render either the surety of the sheriff or the surety of the deputy liable on bonds."

We find no inconsistency in the allegations contained in this indictment. It is possible that the state may be able to prove that defendant acted both in the execution of his office and under color of his office.

We conclude that the plaintiff's assignment of error is well taken. The final order of the trial court quashing the indictment against defendant and ordering his release affects a substantial right of plaintiff and is prejudicial.

The final order will be, and hereby is, reversed and this cause is remanded to the trial court for further proceedings according to law.

*Judgment reversed.*

CRAWFORD, P. J., and KERNS, J., concur.