633 S.E.2d 286

**WETZEL COUNTY SOLID WASTE AUTHORITY, Petitioner**

v.

**THE PUBLIC SERVICE COMMISSION OF WEST VIRGINIA AND LACKAWANNA TRANSPORT COMPANY, Respondents.**

No. 33036.

Supreme Court of Appeals of West Virginia.

Submitted June 7, 2006.

Decided June 29, 2006.

Darrell V. McGraw, Jr., Attorney General, Silas B. Taylor, Senior Deputy Attorney General, Charleston, for the Petitioner.

Richard E. Hitt, Charleston, for the Respondent, Public Service Commission of West Virginia.

Logan Hassig, Snyder & Hassig, New Martinsville, for the Respondent, Lackawanna Transport Company.

PER CURIAM:

Through this original proceeding, Wetzel County Solid Waste Authority (hereinafter referred to as the "Authority") seeks a writ of mandamus to compel the West Virginia Public Service Commission ("PSC") to enforce its final order denying a certificate of need to Lackawanna Transport Company ("Lackawanna"). Upon our careful review of this matter, we determine that the PSC has failed to take the necessary action to enforce its order of August 19, 2005, which denied Lackawanna's application for a certificate of need to operate a sewage sludge composting facility. Although it has both statutory authority and an obligation to compel obedience to its lawful orders, the record in this case

amply demonstrates that the PSC has failed to exercise its enforcement rights with regard to this matter. Accordingly, we grant the requested writ and direct the PSC to issue a cease and desist order with regard to Lackawanna's operation of a sewage sludge composting facility.

## I. Factual and Procedural Background

The underlying matter was initiated by Herbert Heiss, a Wetzel County citizen, upon his filing of a complaint with the PSC in September 2001.[1] Mr. Heiss averred that Lackawanna was operating a commercial sewage sludge composting facility without having first obtained the requisite certificate of need as required by law.[2] The Authority was permitted to intervene in this matter in support of Mr. Heiss' complaint.

In response to the complaint, Lackawanna argued that it was previously granted a certificate of need for a landfill that it operated on the same site as the sewage sludge facility. Contending that a grandfathered certificate of need issued for its landfill operation on February 27, 1992,[3] included implied authority to compost sewage sludge, Lackawanna took the position that no hearing was required to resolve this issue. Upon its consideration of whether Lackawanna needed to obtain a separate certificate of need to engage in sewage sludge composting, the administrative law judge ("ALJ") issued a recommended decision in March 2002 finding that the certificate of need issued in 1992 did not authorize sewage sludge composting. The ALJ determined that Lackawanna had to apply for a certificate of need if it wanted to continue to operate a sewage sludge facility.

Challenging the ALJ's adverse recommendation, Lackawanna sought a hearing on certain evidentiary issues. Following a remand for hearing purposes, the ALJ issued a rec-

1. *See* W.Va.Code § 24–4–6 (1913) (Repl.Vol. 2004) (authorizing "[a]ny person, firm, association of persons, corporation, municipality or county" to file petition with PSC setting forth alleged statutory violations).

2. *See* W.Va.Code § 24–2–1c(a) (1998) (Repl.Vol. 2004).

3. Lackawanna had been composting at the landfill since 1989. A certificate of need was not required to operate a landfill until October 18, 1991, when amendments to West Virginia Code § 24–2–1c(a) went into effect. Under that statutory provision, any person holding a valid permit for operation of a commercial solid waste facility issued by the DEP was required to submit an application for a certificate of need.

ommended decision on December 16, 2002, under the terms of which Lackawanna was required to obtain a certificate of need and directed to cease and desist sewage sludge composting operations.[4] On May 9, 2003, the PSC issued a final decision on Mr. Heiss' complaint and concluded that Lackawanna was operating illegally because it was statutorily required to obtain a certificate of need for the sewage sludge processing facility it built sometime after August 3, 2001.[5] Essentially determining that Lackawanna's arguments regarding the applicability of the grandfathered certificate of need had been mooted by its construction of a new indoor composting facility, the PSC ruled that Lackawanna had to obtain a certificate of need to comply with West Virginia Code § 24-2-1c(a).[6] The PSC specifically refrained from issuing a cease and desist order as part of its May 2003 ruling, based on its conclusion that: "LTC's [Lackawanna] facility investment, the potential loss of employment and potential harm to LTC's business viewed in conjunction with the progress toward resolution of the CON [certificate of need] case lead the Commission to conclude that a cease and desist order is not warranted pending resolution of the CON proceeding."

Lackawanna appealed the May 9, 2003, decision of the PSC requiring it to obtain a certificate of need. This Court, in deference to the PSC's decision to allow Lackawanna to operate its sewage sludge composting facility while seeking the required certificate of need, deferred ruling on the appeal pending a decision by the PSC on the certificate of need application. By ruling entered on August 19, 2005, the PSC denied the application for a certificate of need.[7] On November 10, 2005, the PSC refused Lackawanna's request for reconsideration of its ruling. By order entered February 28, 2006, this Court refused to accept the appeal sought by Lackawanna from the PSC's final decision denying it a certificate of need.

The Authority filed a petition with this Court on December 12, 2005, through which it sought a writ of mandamus directing the PSC to issue a cease and desist ruling based on Lackawanna's illegal operation of a composting sewage sludge facility without the requisite certificate of need. This Court, by order entered on March 2, 2006, issued a rule to show cause as to why mandamus should not be imposed against the PSC. During the pendency of this proceeding, the West Virginia Department of Environmental Protection ("DEP") issued an order on May 8, 2006, directing that Lackawanna cease and desist acceptance of sewage sludge for composting within ten days of the issuance of that order.[8]

## II. Standard of Review

 This Court explained in *State ex rel. Public Service Commission v. Gore Water Association*, 193 W.Va. 555, 457 S.E.2d 492 (1995), that the PSC is authorized to compel obedience to its lawful orders through mandamus or injunctive relief in the name of the State of West Virginia. *Id.* at 557, 457 S.E.2d at 494 (citing W.Va.Code § 24-2-2). As we explained in *State ex rel. Public Ser-*

---

**4.** On September 20, 2002, Lackawanna filed an application for a certificate of need with the PSC. That application was ultimately denied by the PSC on August 19, 2005, and this Court, by order entered on February 28, 2006, refused to accept an appeal of that denial.

**5.** In compliance with a cease and desist order entered by the DEP on August 21, 1996, Lackawanna ceased sewage sludge composting operations. It did not resume those operations until the DEP issued a consent order on August 3, 2001. The terms of the consent order required it to construct an enclosed and roofed sludge receiving and mixing building with odor controls and an indoor composting facility.

**6.** That provision provides that "[a]ny person applying for a permit to construct, operate or ex-

pand a commercial solid waste facility ... or any person seeking a major permit modification" must obtain a certificate of need. W.Va.Code § 24-2-1c(a).

**7.** The basis for the PSC's denial was the statutory requirement that it can only issue a certificate of need where the facility's location is consistent with the solid waste authority's local siting plan. *See* W.Va.Code § 24-2-1c(d)(3). Lackawanna never obtained siting approval from the Authority for its composting facility. *See* W.Va.Code § 22C-4-24(e) (2005) (requiring siting approval from solid waste authority).

**8.** During oral argument of this matter, Lackawanna represented that it intended to pursue its rights of appeal with regard to the DEP's cease and desist order.

**344**

*vice Commission v. Town of Fayetteville*, 212 W.Va. 427, 573 S.E.2d 338 (2002):

> This Court will utilize the mechanism of a writ of mandamus as extraordinary relief when a public officer or body has failed in the performance of a mandatory, non-delegable duty. " 'Mandamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies.' Syllabus Point 1, *State ex rel. Allstate Insurance Co. v. Union Public Service District*, 151 W.Va. 207, 151 S.E.2d 102 (1966)." Syl. Pt. 4, *State ex rel. Affiliated Constr. Trades Found. v. Vieweg*, 205 W.Va. 687, 520 S.E.2d 854 (1999). "To entitle one to a writ of mandamus, the party seeking the writ must show a clear legal right thereto and a corresponding duty on the respondent to perform the act demanded.' Syl. Pt. 2, *State ex rel. Cooke v. Jarrell*, 154 W.Va. 542, 177 S.E.2d 214 (1970)." Syl. Pt. 1, *Dadisman v. Moore*, 181 W.Va. 779, 384 S.E.2d 816 (1988).

212 W.Va. at 431, 573 S.E.2d at 342.

Against these standards, we proceed to consider whether a writ of mandamus should issue to require the PSC to utilize its enforcement powers to compel obedience to its rulings with regard to Lackawanna's illegal operation of a commercial composting facility.[9]

### III. Discussion

Only one matter is at issue in this extraordinary proceeding—the PSC's complete lack of enforcement of two related orders that it issued. Through the first order, the PSC determined that Lackawanna was required to obtain a separate certificate of need to oper-

ate its sewage sludge composting facility.[10] And through the second order, the PSC denied Lackawanna a certificate of need for this facility after considering the application submitted by Lackawanna.[11] Following the PSC's issuance of the final order on August 19, 2005, denying the statutorily required certificate of need, the Authority sought the assistance of this Court based on the fact that the PSC has done nothing to enforce its orders relative to Lackawanna's non-compliant commercial composting operation.

■ While conceding that it "had a mandatory obligation to deny the CON [certificate of need]" sought by Lackawanna due to non-compliance with the Wetzel County solid waste management siting plan,[12] the PSC takes the position that mandamus is not available under the circumstances of this case. Downplaying its enforcement powers under West Virginia Code § 24-2-2, the PSC postulates that a state court, rather than an administrative agency such as itself, should weigh the equities of the "local economic benefits of the plant versus the perceived local nuisance of the plant"[13] and be the deciding body to resolve whether the Lackawanna facility can continue to operate. Additionally, the PSC insists that a decision concerning the enforcement of its own orders is discretionary and does not involve a legal duty that is enforceable through mandamus.

In its brief, the PSC argues that "the Wetzel County Circuit Court is precisely the appropriate entity to weigh the equities and make the decision as to whether the Wetzel County facility should cease operation." This argument is both specious and inapposite, as there is no action relative to the

---

9. *See* W.Va.Code § 22-15-2(11) (defining "commercial composting facility" under the Solid Waste Management Act) (1998) (Repl.Vol.2002).

10. This order was entered by the PSC on May 9, 2003.

11. *See supra* note 4.

12. *See* W.Va.Code § 24-2-1c(d)(3) (identifying "inconsisten[cy] with any applicable county or regional solid waste management plan" as ground for denial of certificate of need required for solid waste facilities).

13. The PSC also argued that the Authority had another adequate and appropriate remedy by seeking relief in state court. Based on the filing of a counterclaim through which the Authority sought injunctive relief in state court, the PSC contended that the Authority had an alternate means of seeking relief in connection with this matter. The Authority dismissed that claim, however, after this Court denied, by rulings issued on February 28, 2006, both of the pending petitions for appeal related to the PSC's decision that Lackawanna required a certificate of need to legally operate its sewage sludge composting facility.

Lackawanna facility pending before the state circuit court.[14] Upon review of the record in this matter, we are left with the opinion that the PSC completely dropped the ball with regard to the enforcement of its determination that it "had a mandatory obligation to deny the CON [certificate of need]" sought by Lackawanna.

In syllabus point one of *West Virginia–Citizen Action Group v. Public Service Commission*, 175 W.Va. 39, 330 S.E.2d 849 (1985), this Court explained:

> The Public Service Commission was created by the Legislature for the purpose of exercising regulatory authority over public utilities. Its function is to require such entities to perform in a manner designed to safeguard the interests of the public and the utilities. Its primary purpose is to serve the interests of the public. *Boggs v. Public Service Commission*, 154 W.Va. 146, 174 S.E.2d 331 (1970).

As we recognized in *Town of Fayetteville*,

> "[t]he PSC's jurisdiction is further derived from West Virginia Code § 24–2–7(a) (1979) (Repl.Vol.2001), which provides:
>
> Whenever, under the provisions of this chapter, the [PSC] shall find any regulations, measurements, practices, acts or services to be unjust, unreasonable, insufficient or unjustly discriminatory, *or otherwise in violation of any provisions of this chapter,* or shall find that any service is inadequate, or that any service which is demanded cannot be reasonably obtained, the [PSC] *shall determine and declare, and by order fix* reasonable measurements, regulations, acts, practices or services, fix to be furnished, imposed, observed and followed in the state in lieu of those found to be unjust, unreasonable,

insufficient, or unjustly discriminatory, inadequate *or otherwise in violation of this chapter, and shall make such other order respecting the same as shall be just and reasonable.*

212 W.Va. at 432, 573 S.E.2d at 343 (emphasis supplied).

The Legislature expressly added to the PSC's jurisdictional basis in 1988, giving the administrative agency authority to establish rates charged by commercial solid waste facilities and make rules governing the transportation of solid waste. *See* W.Va.Code § 24–2–1b (2000) (Repl.Vol.2004). At the same time the Legislature established this expanded rate making authority, it enacted a separate statute requiring that:

> (a) Any person applying for a permit to construct, operate or expand a commercial solid waste facility as defined in section two [§ 22–15–2], article fifteen, chapter twenty-two of this code, or any person seeking a major permit modification for a commercial solid waste facility from the division of environmental protection first shall obtain a certificate of need from the public service commission.

W.Va.Code § 24–2–1c(a) (1998) (Repl.Vol. 2004). The parties did not dispute[15] below that the PSC had certificate of need jurisdiction over commercial solid waste facilities such as Lackawanna under the 1998 reenactment of West Virginia Code § 24–2–1c(a).

The provisions of West Virginia Code § 24–2–1c expressly delineate the grounds upon which the PSC is mandated to deny an application for a certificate of need requested by a solid waste facility such as Lackawanna. Under West Virginia Code § 24–2–1c(d), one of the six grounds which compels the PSC to refuse to issue a certificate of need for a solid

---

**14.** At the time of the filing of the writ of mandamus, the Authority had a pending application for injunctive relief in state court. Also pending before this Court at that time, were two petitions for appeal filed by Lackawanna with regard to the PSC's determination that it required a certificate of need and to the subsequent denial of its application for a certificate of need. Following this Court's refusal to accept either of Lackawanna's appeals, the Authority voluntarily dismissed its action seeking injunctive relief below "with the expectation that the PSC would finally initiate its own enforcement measures."

**15.** In the May 9, 2003, ruling the ALJ expressly found that "[i]t is not disputed that in 1998 a sewage sludge processing facility was a commercial solid waste facility subject to the Commission's CON jurisdiction." The ALJ continued to state that Lackawanna "makes several arguments as to why these statutes do not require ... [it] to have a CON for the composting operation." Lackawanna's arguments were rejected by the ALJ.

waste authority is: "The location is inconsistent with any applicable county or regional solid waste management plan." W.Va.Code § 24–2–1c(d)(3). Because the Authority found the Lackawanna facility to be inconsistent with its solid waste management plan, the PSC was required to deny Lackawanna the requested certificate of need.

While acknowledging that the PSC has enforcement powers under West Virginia Code § 24–2–2, Lackawanna argues that the statutory language establishing those powers is permissive, rather than compulsory. At issue is the language which provides that "[t]he commission may compel obedience to its lawful orders by mandamus or injunction or other proper proceedings in the name of the state in any circuit court having jurisdiction of the parties or of the subject matter...." W.Va.Code § 24–2–2. Based on the use of the term "may" rather than shall, Lackawanna contends that the enforcement powers provided in this statutory provision can not be viewed as mandatory in nature.

In syllabus point seven of *Weil v. Black*, 76 W.Va. 685, 86 S.E. 666 (1915), however, we interpreted this statutory language to be mandatory:

> Where the public service commission has, upon proper evidence and after due consideration, made an order prescribing certain rates to be charged for services to be rendered by a public service corporation, *it is the official duty of the individual members of such commission to compel obedience to such order*, if it be not obeyed, by instituting proper proceedings in court.

In a similar vein, this Court determined that the PSC had no discretion with regard to compelling the collection of tolls on its bridges, as then required by law:

In discharging the functions required by the statute of its creation and subsequent related acts, the Public Service Commission is dealing with instrumentalities that certainly affect the public interest and welfare in many vital ways, and we believe it is quite apparent, even though the legislative purposes are not expressed in its enactment relating to the Commission's duties, *that the expeditious and prompt exercise of its powers is a necessarily implied requirement.* The Commission is an administrative body whose duties demand the exercise of quasi judicial functions. *It has no arbitrary discretion,* so that its powers are not to be exercised in a manner that is controlled by what, in its judgment, the expediency of the situation with which it is confronted requires.

*Village of Bridgeport, Ohio, v. Public Serv. Comm'n,* 125 W.Va. 342, 347, 24 S.E.2d 285, 287 (1943) (emphasis supplied).

Relying on these two decisions of the Court,[16] the Authority argues that the PSC has no discretion to refrain from exercising its enforcement powers with regard to duly issued rulings. We agree. The language of West Virginia Code § 24–2–7(a) makes clear that upon a determination that any act is "in violation of any provision[ ] of this chapter," the PSC is compelled to take action to force compliance with the governing statutory provisions. Moreover, this Court has previously made clear that the language of West Virginia Code § 24–2–2, which permits the PSC to seek enforcement of its lawful orders through mandamus or injunctive relief, is to be applied in an obligatory fashion. *See Weil,* 76 W.Va. 685, 86 S.E. 666; *accord Village of Bridgeport, Ohio,* 125 W.Va. 342, 347, 24 S.E.2d 285, 287. Based on our recognition in *Weil* that the duties of the PSC are "ministerial" with regard to compelling obe-

---

**16.** The PSC suggests that *Weil* and *Village of Bridgeport* are inapposite decisions because they involve rate making issues, whereas this case does not. We find this distinction to be without merit. Nothing in the language of either West Virginia Code §§ 24–2–2 or 24–2–7(a) suggests that the enforcement powers of the PSC are solely limited to rate making issues.

Reasoning along the same lines, the PSC asserts that the involvement of the DEP in issuing permits for solid waste management facilities suggests somehow that the PSC cannot take action with regard to any matter where there may be an overlap of jurisdictional responsibility. As the Authority aptly observed during the oral argument of this case, "just because multiple agencies have jurisdiction, it does not relieve the PSC to do their duty" under the statute. We agree.

dience to its own orders, we reject the PSC's argument that its enforcement powers are discretionary in nature and therefore not properly the subject of a mandamus action. 76 W.Va. at 692, 86 S.E. at 669.

We recognize that the PSC, in failing to initially enter a cease and desist order as part of its May 9, 2003, ruling, took into consideration the economic impact that the closing of the Lackawanna facility might have on the local economy. As a tribunal charged with upholding the rule of law, however, our concern in this case is to identify the law applicable to the dispute before us, that is, the extent of the duties and enforcement powers granted by the Legislature to the PSC and to see that the PSC complies with its statutorily-prescribed duties.

█ Having determined that the PSC has issued a lawful order finding Lackawanna to be operating illegally but refrained from exercising its compulsory enforcement obligations with regard to its lawful order, we determine that a writ of mandamus shall issue directing the PSC to immediately issue a cease and desist order with regard to the Lackawanna commercial composting facility.[17] And, if Lackawanna fails to comply with the terms of the cease and desist order, the PSC shall institute proper proceedings to enforce the terms of the order. *See* W.Va. Code § 24-2-2; *Weil,* 76 W.Va. at 686, 86 S.E. at 666, syl. pt. 7.

Writ issued.

---

**17.** We decline to act on the request of the Authority that the PSC be required to reimburse it for its attorney's fees, finding such request inappropriate due to the fact that both the PSC and the Authority are public bodies. *See, eg., State ex rel. West Virginia Highlands Conservancy, Inc. v.*

---

*West Virginia DEP,* 193 W.Va. 650, 654, 458 S.E.2d 88, 92 (1995) (observing that in determining whether legal fees should be borne by private entities or taxpayers, Court considers as one of the relevant factors the relative financial resources of the parties).