# CHARLESTON.

BLUE, STATE TAX COMMISSIONER, v. SMITH, SHERIFF.

Submitted October 27, 1911,    Decided November 14, 1911.

1. STATES—*Creation of Offices—Constitutional and Statutory Provisions.*

   The legislature had the power to create the office of State Tax Commissioner and said office is not in violation of the state Constitution.  (p. 762).

2. SAME.

   Said office is subordinate in the executive department of the state, and the power and duties thereof do not conflict with those of any office created by the state Constitution.  (p. 762).

3. CONSTITUTIONAL LAW—*Distribution of Governmental Power—Delegation of Legislative Power.*

   Chapter 33 of Acts 1908, providing for a uniform system of public accounting, and appointing the State Tax Commissioner chief inspector and supervisor of public offices, and authorizing him to prescribe forms for the keeping of accounts of public funds, and, after having such forms approved by the board of public works, making it the duty of every public officer and employee to keep the accounts of his office according to such prescribed form, does not empower such chief inspector to perform a legislative function.  Said act is not in conflict with either the letter, or the spirit, of the Constitution.  (p. 763).

Original proceeding by Fred O. Blue, State Tax Commissioner, for *mandamus* to S. P. Smith, Sheriff of Kanawha County.

*Peremptory writ awarded.*

*L. S. Echols, E. R. Kingsley* and *Fred O. Blue,* for petitioner.

*W. G. Mathews,* for respondent.

WILLIAMS, PRESIDENT:

This is an original *mandamus* proceeding of Fred O. Blue, State Tax Commissioner, and *ex officio* Chief Inspector and Supervisor of Public Offices, against S. P. Smith, sheriff of Kanawha county, to compel him to keep his accounts of the public funds according to certain forms of public accounting, prescribed by said chief inspector for the use of the sheriffs of

all the counties of the state, and approved by the board of public works on the 27th of May, and on the 8th of July, 1910.

On the filing of the petition an alternative writ was issued, to which respondent appeared and demurred. He also moved to quash said writ, and at the same time made return thereto. To sustain the demurrer, and motion to quash, it is insisted that the office of State Tax Commissioner was created in violation of the state Constitution, and is, therefore, not a lawful office, and confers no power on the incumbent.

The legislature has the inherent power to create the office, in our opinion, unless there is an express, or a necessarily implied prohibition upon it to do so, contained in the Constitution. Counsel for respondent concedes this to be the law. Looking to that solemn document, we find that there is certainly no such inhibition expressed, and instead of finding any implied restriction upon the power of the legislature to create offices, we find that sec. 8 of article IV expressly authorizes that body, even if such authorization were thought to be necessary, to prescribe by general law, the terms of office, powers, duties and compensation of all public officers and agents and the manner in which they shall be elected, appointed and removed, "in cases not provided for in this Constitution."

Section 8 of article VII prohibits the legislature from appointing, or electing any officers, (but not from creating offices,) and confers upon the governor the right to nominate, and by, and with, the advice and consent of the senate, to appoint, not only officers mentioned in the Constitution, the manner of whose election is not therein provided for, but also, such officers as *"shall be created by law."* This is certainly as clear and express recognition of the right of the legislature to create, by law, other offices than those named in the Constitution, as it is a vesting of power in the governor, acting with the advice of the senate to fill such offices by appointment, after they are created. The legislature, of course, cannot create offices which will conflict with, or curtail the constitutional powers of, any of the offices provided for by the Constitution. But the office of State Tax Commissioner does not do so. That office was created as an aid to the executive department in the administration of the laws respecting the state's revenues. The governor has the

power, together with the senate, to fill it, and the governor alone has power to declare it vacant. The State Tax Commissioner is a subordinate office in the executive department, the incumbent may be removed by the chief executive at his will. His powers and duties are purely ministerial, and do not in any manner conflict with those of any other office created by the Constitution. Our conclusion is that the legislature has the power to create the office of State Tax Commissioner, and that the office is lawfully constituted.

It is not necessary that I should enter upon an extended discussion of this question, because we have today decided the same point, raised in the case of *Blue, State Tax Commissioner,* v. *Tetrick, Clerk,* and I am content to refer to the very able discussion of the subject in the opinion prepared by Judge BRANNON in that case. The reasons which he there assigns for holding the office to be lawfully created, apply with equal force here. We are too much burdened with work, and too much pressed for time, to justify a repetition of reasons for repeated decisions of the same questions, especially when made at the same time and so well considered as in the opinion in that case.

The unconstitutionality of ch. 33, Acts 1908, was not discussed by counsel in this case, still it may be regarded as having been raised by the demurrer. But we have no doubt concerning the constitutionality of that act, and hold it constitutional and valid, and I again refer to the opinion prepared by Judge BRANNON in the case above cited, for the reasons in support of our opinion sustaining the act.

By that act the legislature made the State Tax Commissioner *ex officio* Chief Inspector and Supervisor over Public Offices, and imposed upon him duties, power and authority, in addition to those conferred upon him by ch. 4, Acts 1904, which was the act creating the office of State Tax Commissioner. Ch. 33, Acts 1908, was enacted for the purpose of securing a uniform system of keeping the accounts of public funds of the state, and its political subdivisions. It authorizes the chief inspector to prescribe, and install, a system of accounting and reporting, which shall be uniform for all public offices and for all public accounts, of the same class. It provides that when such system is formulated by him, it shall then be submitted to the board of public

works for its inspection and approval before it becomes operative. The act itself became effective on the 1st of January 1909. The chief inspector did prescribe forms for the keeping of accounts of all public moneys, for the use of the sheriffs of the various counties of the state. On the forms there are columns for keeping the accounts of the various funds which the sheriff receives from all the different sources provided for by law, and also columns for noting the time it was received, and columns for noting the times and purposes for which it was disbursed. Said form was submitted to the board of public works, and was approved by it on the 27th of May, and on the 8th of July, 1910. At the same time the chief inspector also submitted to the board of public works printed instructions and explanations, intended to guide the sheriffs in the use of said prescribed forms, and they were also approved.

The alternative writ charges that respondent has not kept and that he is not now keeping his public accounts in the manner which he was required to do according to the aforesaid forms and instructions. Respondent does not deny this charge, but he insists, in his return, that the system prescribed is complicated, and difficult to understand and to follow. We do not think so, neither would it furnish a good excuse for non-compliance, if it were so. True, there are many different accounts for the sheriff to keep, but there are also many different purposes for which the public funds, handled by him, are to be used. It may be true that the system imposes some extra labor upon the sheriff, and perhaps may require some additional clerical assistance in his office, not necessary under the old law. But the law was passed in February 1908, and was to take effect the 1st of January 1909, and respondent must have known of the law before he was elected. Hence, it cannot be said to have the effect to decrease the emoluments of his office, during his term, by making it necessary for him to employ additional clerks. Because the law took effect at the same time he took office. The system prescribed may require the keeping of more separate accounts of the receipts and disbursements of the several public funds which are handled by the sheriff than he has heretofore been accustomed to keep, but the system is not complicated, neither does it seem to us difficult to understand. It is useful

and valuable in that it furnishes daily balances of each particular fund which he collects and disburses, and operates, automatically, as a settlement of his accounts of all the various funds. The new system may occasion a little more trouble and labor to keep the accounts, but it will occasion vastly less, in making the sheriff's annual settlements.

It is true, that at the time the application was made for the alternative writ, property taxes, assessed for the fiscal year 1911, were not due and payable, and none had been collected. It would be expected that respondent's accounts would be blank as to such taxes. But liquor license taxes are payable, under the law, the 1st of July of each year, and respondent admits that he has collected many thousand of dollars of liquor license taxes, and that he has not kept an account of them in the form prescribed and furnished him by the chief inspector, but he avers that he has kept a separate and distinct record of such taxes in a ledger, or cash book, which he keeps for that purpose.

He also admits that he has not kept fines received by him from justices of the peace in the manner provided by the prescribed form, but avers that he has kept an account of said fines in a separate ledger. He makes the same admission, and allegation, with respect to his accounts of fines received by him, which have been imposed upon offenders against the law, by the criminal and the circuit courts. These admissions show a noncompliance with the law relating to the uniform keeping of public accounts, and justify the awarding of the peremptory writ, which will be awarded.

*Peremptory writ awarded.*