STATE *ex rel.* ED GILLESPIE

*v.*

GEORGE W. WOOD, *Judge, etc., et al.*

(No. 12946)

Submitted May 27, 1970.                    Decided July 17, 1970.

Dissenting Opinion July 17, 1970.

*George A. Daugherty,* for relator.

*Leo Catsonis,* Special Prosecuting Attorney, for respondents.

BROWNING, PRESIDENT:

This is an original proceeding in prohibition instituted by the State of West Virginia at the relation of Ed Gillespie, hereinafter referred to as petitioner, against the Honorable George W. Wood, Judge of the Intermediate Court of Kanawha County, and Patrick Casey, Prosecuting Attorney of Kanawha County, hereinafter referred to as respondents. The purpose of this proceeding is to prohibit the respondents from prosecuting petitioner under felony indictment No. 3028 returned by a grand jury of the Intermediate Court of Kanawha County during the September, 1969, term.

Under the first count of the indictment petitioner is charged with attempting to bribe one Dale Curry, described as "an executive and ministerial officer of the State of West Virginia, being duly qualified and appointed." The indictment further describes Curry as "a Buyer in the Purchasing Division of the Department of Finance and Administration of the

State of West Virginia." The attempted bribe was "to influence the said Dale Curry, in the performance of any of his official and public duties," and, more particularly, "to grant favor and award business to the Debs Hospital Supplies, Inc.," in which corporation petitioner was interested. The second count of the indictment is identical to the first count except that, instead of charging attempted bribery, it charges that petitioner actually committed bribery.

Petitioner alleges that the so-called "Buyer" was not an executive or ministerial officer of the State, that the Buyer had never been duly qualified and appointed as such an officer, and that the Buyer was not known by petitioner to be such an officer. Petitioner says that the Buyer was merely an employee of the State instead of an executive and ministerial officer, and, thus, is not a person who can be bribed under Code, 61-5-4, as amended, which reads as follows:

> If any person shall bribe, by directly or indirectly giving to or bestowing upon, or shall attempt to bribe by directly or indirectly giving to or bestowing upon, *any executive, legislative, judicial, or ministerial officer of this State, or any member of the legislature,* after his election or appointment and either before or after he shall have been qualified or shall have taken his seat, any gift, gratuity, money, testimonial or other valuable thing, or shall make promise thereof, in order to influence him in the performance of any of his *official, public duties,* or with intent to influence his *act, vote, opinion, decision or judgment* on any matter, question, cause or proceeding, or to induce or procure him to vote or withhold his vote on any question or proceeding which is then or may thereafter be pending, or may by law come or be brought before him in his *official capacity,* he shall be guilty of a felony, and, upon conviction, shall be imprisoned in the penitentiary not less than one nor more than ten years, and shall, moreover, be forever disqualified from holding any office or position of honor, trust or profit in this State. (Emphasis added.)

In support of his argument, petitioner asserts that the Buyer was not elected, not required to take an oath of office, and not required to execute a fidelity bond; that the position of "Buyer" is not mentioned in our State Constitution, Code,

or in the Rules and Regulations promulgated by the Commissioner of Finance and Administration or by the Director of the Purchasing Division; that the term "Buyer" apparently arose as a matter of job description; that the Buyer had no tenure of office but was merely employed on a month-to-month basis; that the Buyer in no way exercised discretion or prerogative in the performance of his job; that there was no official certificate of election, appointment, etc., relating to the Buyer; and that the Code specifically provides that the director shall be "*the* executive officer of the purchasing division." (Emphasis added.)

.Petitioner concludes by asserting that since the Buyer is a mere employee, he could not be the object of a bribe or an attempted bribe, and, this being so, the indictment is void. It is further asserted that the indictment is void because Code, 61-5-4, as amended, "is vague and unconstitutional and void and that it is inconsistent with other statutes promulgated by the Legislature and the Constitution of West Virginia."

In answer to the above, respondents deny that the Buyer was not an executive and ministerial officer; aver that he was appointed by the Commissioner of Finance and Administration as attested to by a certificate of appointment given to the Buyer; and deny that he was a mere employee. Respondents admit that while the Buyer did not have to execute an "independent" fidelity bond, he was covered by a "blanket" bond. In respondents' Exhibit No. 1, an affidavit of Dale Curry, Curry says that he was appointed in June, 1961, as a Buyer, "with the primary responsibility of establishing a drug purchasing program," since he is a registered pharmacist. At some time after his appointment, "he contacted several drug manufacturers in order to negotiate contracts directly with them where possible instead of with retailers as was the existing policy; that thereafter he began negotiating price agreements with the manufacturers." The affidavit goes on to say that once contracts were negotiated, "he could and did sign purchase orders in any amount on behalf of the State." Respondents allege that the purchasing director delegated the responsibility with respect to purchasing drugs to the

Buyer, and that the Buyer "did, in fact, exercise such power and authority."

Respondents further admit, as petitioner alleges, that the position of "Buyer" is not mentioned in the Code, Constitution, or Rules and Regulations of the department, but aver that such position has existed for numerous years and that the Buyers for the purchasing division were and are responsible for a large number of purchases and transactions for and on behalf of the State.

Along with numerous other denials on behalf of respondents, the answer also contains a demurrer to the petition based on four grounds. In a replication to the demurrer, petitioner moves this Court "that such demurrer be stricken and/or quashed," on the ground that the matters in the demurrer "are not matters properly contained in a demurrer."

On March 23, 1970, the rule was granted returnable on May 5, 1970. The case was continued to May 26, 1970, and on May 27, 1970, was submitted for decision upon oral argument and briefs.

This case differs from the companion cases No. 12935 and No. 12936, styled *State ex rel. Carson v. Wood*, 154 W.Va. 397, 175 S.E.2d 482, decided this day, only in this regard: the petitioner in *Carson* was an alleged "executive and ministerial officer of the State of West Virginia" accused of accepting bribes, while the petitioner in the instant case is accused of bribing and attempting to bribe an alleged "executive and ministerial officer of the State of West Virginia." Also, the petitioner in *Carson* was indicted under Code, 61-5-5, as amended, while this petitioner was indicted under Code, 61-5-4, as amended. These two statutes are, of course, those applicable in the respective cases.

While these factual differences do exist, we find the cases indistinguishable. The same principles apply in each, and reference is hereby made to the *Carson* case for the applicable law. We hold in this case that prohibition is the proper remedy; that sufficient facts are set forth in the verified pleadings in the case to determine that Curry was a mere

employee and not an executive and ministerial officer of the State as alleged in the indictment; that because of this no crime is charged in the indictment, and, therefore, the indictment is void; and that since the indictment is void, the respondent judge of the Intermediate Court of Kanawha County is without jurisdiction to proceed further in the case. Therefore, the writ of prohibition is awarded as prayed for.

*Writ awarded.*

CALHOUN, JUDGE, dissenting:

Respectfully, I dissent. The reasons for my dissent, generally speaking, were stated in my dissenting opinion filed in the two combined cases styled *State ex rel. Carson v. Wood,* 154 W.Va. 397, 175 S.E.2d 482, which were decided by the Court on the same day as the instant case.

The indictment charges that Ed Gillespie, the accused, "did intentionally, willfully, unlawfully and feloniously attempt to bribe, Dale Curry, an executive and ministerial officer of the State of West Virginia, being duly qualified and appointed, to-wit: Dale Curry, a Buyer in the Purchasing Division of the Department of Finance and Administration of the State of West Virginia, and who was then and there known by the said ED GILLESPIE, to be such an executive and ministerial officer of the State of West Virginia, * * *."

As the majority opinion states, Ed Gillespie was indicted pursuant to the provisions of Code, 1931, 61-5-4, which provides that if any person shall bribe, or attempt to bribe "any executive, legislative, judicial, or ministerial officer of this State, or any member of the legislature," such person shall be guilty of a felony.

The basis of the prohibition proceeding, and of the Court's decision, is that, notwithstanding the clear allegations of the indictment to the contrary, Dale Curry was not, in fact, "an executive and ministerial officer of the State of West Virginia, being duly qualified and appointed"; that, therefore, the indictment is null and void; and that, the indictment being

void, the trial court lacks jurisdiction to proceed further against the accused upon the charge alleged in the indictment.

In this case, the respondents' answer to the prohibition petition sets forth some of the authority conferred upon and duties performed by Dale Curry as follows:

> "Respondents aver that Dale Curry was appointed to the position of Buyer in the Purchasing Division of the Department of Finance and Administration sometime in June, 1961. Having a B.S. in Pharmacy and credentials as a registered pharmacist, he was given the responsibility of establishing a drug purchasing program for all the State spending units for all drugs purchased on behalf of the State throughout the State. He was the first professional pharmacist to occupy a buyer's position in the Division of Purchasing and past experience had proved that a professional buyer in this area was essential; no other buyer or person in the division was familiar with drugs or medical equipment. At that time there was a total of five (5) buyers in the Division of Purchasing.

> "Shortly after said Buyer's appointment, he began receiving his instructions directly from the Commissioner of the Department of Finance and Administration and was directly responsible to said Commissioner regarding the majority of said Buyer's duties and functions. In initiating the drug purchasing program said Buyer negotiated directly with drug manufacturers instead of retailers and thereafter established a system of negotiating price agreement contracts with said manufacturers. Pursuant to said procedure, the Buyer sent bid forms to the drug manufacturers, who would return a bid proposal to said Buyer. He would analyze the proposals and select the one he believed fairest, and place his initials thereon. A purchase order was prepared and signed by said Buyer and returned to the Vendor. This completed the transaction and bound the State to the terms of the contract for a period of one year, unless a different period was set forth therein.

> "In all of said dealings and transactions with said Vendors, none ever questioned said Buyer's authority to enter into contracts or otherwise negotiate on behalf of the State and, in fact, believed said Buyer to have such authority, * * *.

"The Purchasing Director had, in fact, delegated and assigned to said Buyer the primary responsibility of executing the statutory and other provisions relating to purchasing and said Buyer did, in fact, exercise such power and authority; the Director never signed purchase orders or otherwise interferred with the performance of the duties or functions performed by said Buyer and when said Buyer accepted a bid from a Vendor and executed a purchase order in accordance therewith, the Director deemed the transaction complete and binding, * * *.

"Said Buyer had been given specific written authority by the Commissioner to sign purchase orders and other documents on behalf of the State to the same extent as had the other Buyers in the Division, shown in Respondents' Exhibits Nos. 4 and 5, attached hereto and made a part hereof. In addition, at the time the purchase order was signed by the Buyer State funds were encumbered to pay for the items contained therein in accordance with Code, 5A-3-16 and the rules and regulations of the Purchasing Division.

* * *

"Respondents admit that the position of 'Buyer' is not specifically mentioned in the Code of West Virginia, the West Virginia Constitution, or in any act of the Legislature, or in the Rules and Regulations promulgated by the Commissioner of Finance and Administration or by the Director of Purchasing Division thereof. Respondents aver, however, that the position of Buyer has, for numerous years, been an established position within said Department and said Buyers continue to do all of the purchasing on behalf of the State of West Virginia. The significance and importance of such a position is illustrated by the fact that during the fiscal period 1966-1967, six Buyers in said Department made $22,000,000.00 worth of estimated purchases for the State, as will be more clearly shown by Respondents' Exhibit No. 6, a table from the Council of State Governments, a study for the National Association of State Purchasing Officials, 1969, page 11, attached hereto and made a part hereof, which exhibit also shows that the position of Buyer is recognized in every State with the exception of Delaware, which does not have central purchasing; that during the fiscal year period 1968-1969, six Buyers in said Purchasing Division accounted for

approximately $110,000,000.00 to $120,000,000.00 of transactions and purchases on behalf of the State, * * *."

Despite the clear allegations of the indictment and despite the allegations of the answer which state the source of Dale Curry's authority, the nature of his position, and the extensive area in which he performed governmental functions and exercised an important part of state sovereignty, the Court holds that the indictment is void and insufficient to confer jurisdiction upon the trial court because, forsooth, Curry's position was not created "by the legislature."

The majority opinion in this case and the majority opinion in the *Carson* cases both assert the proposition that penal statutes should be construed strictly against the state and in favor of the accused. This, in any event, is but a rule of statutory construction. At this point, I apprehend that we are concerned only with clear allegations of an indictment, the only defense being predicated upon matters extraneous to the allegations of the indictment.

The statute involved in this case is in a great measure remedial, designed to assure faithful performance by persons occupying positions in government. It is a statute designed to protect public interests and public funds. The penal aspect of the statute is, in some measure, incidental to the primary, salutary purpose of the statute. The rule relating to strict construction of penal statutes is not a rule to be applied with merciless harshness from the standpoint of the public. It is not a rule which requires that courts reach absurd results. The general rule is stated in 82 C.J.S., *Statutes,* Section 389, pages 929-30, as follows:

> "The rule of strict construction does not require that penal statutes be given the narrowest possible meaning, or require a rejection of the sense of the words best harmonizing with context and end in view. Likewise, the rule of strict construction does not require that penal statutes be unreasonably interpreted, or construed so as to render them ineffective, or construed so as to defeat the obvious intention of the legislature, as found in the language actually

used according to its true and obvious meaning, unless forced by the express language of the statute. Penal statutes should not be subjected to any strained or unnatural construction in order to work exemption from their penalties, or to exclude from their operation cases which the words, in their ordinary acceptation, or in the sense in which the legislature used them, would comprehend. In other words, the rule of strict construction does not require that such statutes be wantonly limited or emasculated and rendered ineffective, absurd, or nugatory. Furthermore, the rule of strict construction is applicable only to doubtful cases, and will not be applied where it would lead to absurd results."

I would deny the writ of prohibition in this case. I am authorized to state that Judge Berry concurs in the views expressed in this dissenting opinion.