STATE *ex rel.* LUTHER CARSON

*v.*

GEORGE W. WOOD, *Judge, etc., et al.*

(No. 12935)

*and*

STATE *ex rel.* LUTHER CARSON

*v.*

GEORGE W. WOOD, *Judge, etc., et al.*

(No. 12936)

Submitted May 5, 1970.          Decided July 17, 1970.

Dissenting Opinion July 17, 1970.

*Homer W. Hanna, Jr., Alexander J. Ross,* for relator.

*Leo Catsonis,* Special Prosecuting Attorney, for respondents.

BROWNING, PRESIDENT:

These are original proceedings in prohibition instituted by the State of West Virginia at the relation of Luther Carson, hereinafter referred to as petitioner, against the Honorable George W. Wood, Judge of the Intermediate Court of Kanawha County, and Patrick Casey, Prosecuting Attorney of Kanawha County, hereinafter referred to as respondents. The purpose of these proceedings is to prohibit the respondents from prosecuting the petitioner under felony indictments No. 3010 and No. 3011, returned by a grand jury of the Intermediate Court of Kanawha County during the September, 1969, term.

Indictment No. 3010 charges petitioner, as an "executive and ministerial officer of the State of West Virginia," with

demanding, receiving and accepting a bribe from one Ray George while petitioner was "Director of Office Services" of the State Road Commission of West Virginia. The purpose of such bribe was "to grant favor and award business to . . . Business Systems and Equipment Company, Inc. . . . through and by Ray George who was . . . an agent and . . . person concerned in interest of Business Systems and Equipment Co., Inc." Indictment No. 3011 again charges petitioner, as an "executive and ministerial officer of the State of West Virginia," with demanding, receiving and accepting a bribe, this time from William Williams, a "person concerned in interest of West Virginia Business Forms, Inc."

Petitioner alleges that he went to work for the State Road Commission on or about June 16, 1965, and terminated his employment with the State Road Commission on or about April 8, 1969. He avers in his petition that he was not an officer of the State Road Commission but merely an employee. He further alleges that no State Road Commissioner, during his period of employment, "promulgated any rules or regulations establishing an *office* known as 'Director of Office Services' and fixing the powers and duties of such *office*"; that the West Virginia Code does not establish such an office; that he was not required to take an oath of office or file a fidelity bond; and that he did not receive a "certificate of appointment." Petitioner maintains that his job was "supervised and directed" by the Business Manager of the State Road Commission and that "he had little or no discretion as to how he was to do this job." Petitioner additionally alleges that "he was never and is not now the holder of an office known as 'Director of Office Services' as is alleged in the said indictment returned against him." Thus, petitioner concludes that he is not a person who can be bribed under Code, 61-5-5, as amended, which reads as follows:

> Any *executive, legislative, judicial or ministerial officer, or member of the legislature,* who shall demand, receive or accept any gift, gratuity, money, testimonial or other valuable thing, or shall exact any promise to make such gift or to pay to him, money, testimonial or other valuable thing, or to do any act beneficial to such *officer or member of the legislature,* from any person, company or corporation,

under an agreement or understanding that his vote, opinion, judgment or decision shall be given or withheld in any particular manner upon a particular side of any question, cause or proceeding, which is, or may be by law brought before him in his *official capacity,* or that in such capacity he shall make any particular nomination or appointment, or for any vote or influence he may give or withhold as such *officer or member of the legislature,* or that such *officer* will fail to perform or improperly perform any of his *official, public duties,* shall be guilty of a felony and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than ten years; and in addition thereto such *officer or member of the legislature* shall forfeit the *office* then held by him and shall be forever disqualified from holding any office or position of honor, trust or profit in this State. (Emphasis added.)

It is further asserted that Code, 61-5-5, as amended, "is unconstitutional and void," and this, coupled with the fact that petitioner is not a person who can be bribed under that Code section, renders the two indictments void.

In answer to the above, respondents deny that petitioner was not an officer of the State Road Commission and deny that he was merely an employee; aver that he was appointed to the position of Director of Office Services by former State Road Commissioner Burl A. Sawyers; and aver that petitioner among other duties "exercised discretionary purchasing authority up to $100.00 per day per vendor and administered the employment of approximately 70 employees of the Office Services Division." In short, respondents maintain that petitioner was indeed an officer of the State and thus could be bribed under Code, 61-5-5, as amended. Petitioner filed herein a motion to strike a number of allegations from respondents' answer on the ground that they were "impertinent and scandalous matter," "consisted of mere surplusage and contained extraneous and irrelevant material," and that they "are not responsive to the Petition and in fact plead no defense thereto." Also filed are demurrers by both sides.

On March 2, 1970, rules were granted returnable on May 5, 1970, and on that date the cases were submitted for decision upon oral argument and briefs.

Perhaps one who is not familiar with the history of the law relating to the bribery of officials and employees of units of government, and even those who are, may be inquisitive as to why the legislature in Code, 61-5-5, as amended, made bribery applicable only to executive, legislative, judicial and ministerial officers and members of the legislature. We must first say that the answer to that question is of no concern to this Court in reaching a decision herein since, under the separation of powers provision of the Constitution of this State, the power of enacting legislation is vested solely in the legislature.

Article VIII, Section 21, of the Constitution of this State provides that the common law shall remain in effect in this jurisdiction until changed by statute. Under the common law, bribery of officials was a misdemeanor and not a felony (as presently provided) except bribery of a judge with respect to a cause pending before him, which was a felony. Perhaps when Code, 61-5-5, as amended, was first enacted it was assumed minor "officials" and mere employees would not be subject to the temptation of bribery and it was not necessary to include them; but, to repeat, whatever the reason they are not included is of no concern to this Court. The pivotal issue therefore presented in this proceeding is whether or not the petitioner falls within the definition of Code, 61-5-5, as amended, there being no question that he was indicted as having violated the provision of that statute inasmuch as that indictment follows the statute almost verbatim. However, the initial, or what is often called the threshold, question which must be answered is whether prohibition will lie to restrain the respondent judge of the Intermediate Court of Kanawha County and the prosecuting attorney of that county from proceeding to prosecute petitioner under these indictments.

The Constitution of this State gives this Court original jurisdiction in prohibition, a point not raised or controverted by the respondents. There can be no question, and petitioner does not deny, that the Honorable George W. Wood is the duly elected judge of the Intermediate Court of Kanawha

County and that Patrick Casey, the other respondent, is the duly elected prosecuting attorney of Kanawha County. Furthermore, the statute which created the Intermediate Court of Kanawha County gave to it jurisdiction of criminal proceedings arising as a result of alleged crimes committed in the County of Kanawha. Acts of the Legislature, 1907, ch. 25, § 1-36. The indictments against the petitioner were returned by what, insofar as these proceedings show, was a validly constituted grand jury, and, as heretofore stated, the indictment is in the language of the statute. The indictment in clear and unambiguous language alleges that the petitioner was at the time of the alleged bribery "an executive and ministerial officer of the State of West Virginia." All of this would seem to indicate that the Honorable George W. Wood, Judge of the Intermediate Court of Kanawha County, has "jurisdiction" of this matter and that prohibition will not lie to prevent the trial of the petitioner upon the indictment. However, the answer is not that simple.

The legislature of this State, as it has the power under the Constitution to do, has defined the writ of prohibition as provided for in the Constitution and in 1882 made a material change with regard to that writ. Prior to that time, prohibition would lie only if an inferior court "had not jurisdiction" of the matter in controversy. In 1882, the legislature amended the statute to read, in pertinent part: "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." Acts of the Legislature, 1882, ch. 153, § 1. This is now the entire language of Code, 53-1-1, as amended.

At this point it is safe to say that the able counsel for respondents would not contend that the respondent judge of the Intermediate Court would not be exceeding his legitimate power if he attempted to proceed to try the petitioner upon a void indictment. However, it is contended in brief and argument that it cannot be determined whether the petitioner is "an executive and ministerial officer of the State of West Virginia" until evidence is taken before the trial court creating

either a question of law for the trial judge or a question of fact perhaps for a jury. We reject such a contention as wholly untenable. The clear language of the applicable statutes are to the contrary as well as an unbroken line of decisions of this Court subsequent to 1882. As heretofore stated, Code, 53-1-1, as amended, provides that prohibition shall lie "as a matter of right" in a proper case. Code, 53-1-3, as amended, provides that "[a]pplication for . . . a writ of prohibition shall be on verified petition." Code, 53-1-5, as amended, provides that if a petition in prohibition "makes a prima facie case" a rule shall be issued "against the defendant to show cause why the writ prayed for shall not be awarded." That section further provides that a rule be served upon the defendant or respondent as well as a copy of the petition and that a time be fixed when the rule shall be returnable. Code, 53-1-6, as amended, provides that "[i]f the defendant appear and make defense, such defense may be by demurrer, or answer on oath, to the petition, or both, such answer to be subject to demurrer by the petitioner or relator. Reply may be made when proper. The court or judge may permit amendments as in other cases." Code, 53-1-8, as amended, provides that "[t]he writ peremptory shall be awarded or denied according to the law and facts of the case, and with or without costs, as the court or judge may determine." All of these statutory provisions have been complied with, the issues have been made up and it is clear from the pleadings and exhibits that a question of law is presented to this Court as to whether the writ shall be granted or denied.

In what might be considered a landmark decision following the 1882 amendment to Code, 53-1-1, as amended, this Court held in *N. & W. Ry. v. Pinnacle Coal Co.*, 44 W.Va. 574, 30 S.E. 196, that "(1) The writ is no longer a matter of sound discretion but a matter of right; (2) it lies in all proper cases, whether there is other remedy or not." The sixth syllabus point of that case states that in all cases of usurpation and abuse of power even though the court has "jurisdiction," prohibition "now lies as a matter of right, and not as a matter of sound discretion." This is the first syllabus point of *Weil v. Black*, 76 W.Va. 685, 86 S.E. 666: "Prohibition lies,

as a matter of right, in all cases where the inferior court has not jurisdiction of the subject matter in controversy, and it is not essential to the right to apply for the writ, that the question of jurisdiction should first have been presented to, and passed on by such inferior court; or, that the petitioner has not some other adequate remedy." This is the second syllabus point in the very recent case of *State ex rel. State Road Commission v. Taylor*, 151 W.Va. 535, 153 S.E.2d 531: "Although a court has jurisdiction of the subject matter in controversy and of the parties, if it clearly appears that in the conduct of the case it has exceeded its legitimate powers with respect to some pertinent question a writ of prohibition will lie to prevent such abuse of power." The cases have also used the language "have exceeded or is about to exceed its legitimate powers." See *Rakes v. Ferguson*, 147 W.Va. 660, 130 S.E.2d 102, and the extensive citations of authorities on pages 667 and 668 of the opinion written by Judge Haymond for the Court. This is the tenth syllabus point of *Jennings v. McDougle*, 83 W.Va. 186, 98 S.E. 162: "When a court is attempting to proceed in a cause without jurisdiction, prohibition will issue as a matter of right regardless of the existence of other remedies."

The respondents contend that the pleadings in this proceeding show that the petitioner is, within the meaning of the statute, "an executive and ministerial officer of the State of West Virginia" or at least that the contrary is not shown, and, therefore, the burden being upon the petitioner to show a clear legal right to the writ, it should be denied. Prior to the adoption of the Code of 1923, 61-5-5, as amended, designated only "any executive, legislative or judicial officer of this State, or any member of the legislature" as being subject to its provisions. The word "ministerial" first appeared in the Code of 1923. The "executive and ministerial" office which the indictments charge that the petitioner held under the State Road Commissioner was that of "director of office services." It is alleged in the petition and not denied in the answer that no such "office" was ever created by the Constitution of this State, the legislature of this State or by any rules and regulations established by the State Road Commissioner. However,

as heretofore stated, the answer does aver that in this position the petitioner "exercised discretionary purchasing authority up to $100 per day per vendor and administered the employment of approximately 70 employees of the Office Services Division." The petition alleges, however, that the "job" which the petitioner held was merely a division of the office of business manager of the State Road Commission and that the petitioner was directly responsible to the business manager as to all of his activities. It is further alleged in the petition that the petitioner took no oath of office, had no tenure, that his salary was regularly raised during the four years of his employment and that such a person could not be "an executive and ministerial officer" but was a mere employee or at least was serving in such a capacity as is not covered by Code, 61-5-5, as amended. The following are some brief quotations from MICHIE's JURISPRUDENCE, *Public Officers*, Volume 15, beginning on page 62:

> Generally speaking, a public office is a position *created by law* with duties cast upon the incumbent which involve an exercise of some portion of sovereign power and in which the public is concerned, continuing in their nature, and not merely occasional or intermittent. Among the criteria for determining whether an employment is a public office or not are: that the powers are created and conferred by law, and not by contract; and the fixing of the duration or term of office. That an official oath is required by law is a sign of office, and where a statute prescribes specific duties for an office there is a strong presumption that an office is intended. * * *

> One occupying a position created by the law is a public officer; but to be a public officer, *his office must be created by law.* (Emphasis added.)

For that proposition, the authority cites in the footnotes *State v. Bond,* 94 W.Va. 255, 118 S.E. 276, and therefore, let us now consider that case. This is the first syllabus point: "Generally speaking, a public office is a position created by law, with duties cast upon the incumbent which involve an exercise of some portion of sovereign power and in which the public is concerned, continuing in their nature, and not merely

occasional or intermittent. It is this sense in which the term is used in section 8, article IV of the Constitution." This is the sixth syllabus point of that case:

> One employed by the Secretary of State, and designated by him as his "chief clerk", but whose position as such is not created by law, and who takes no oath, executed no bond, has no fixed tenure, and performs no duties except such as may be required by the Secretary of State, is not a public officer, or public agent within the meaning of section 8, Article IV of the Constitution, but a mere employee.

This language is used with regard to the position held by Mrs. Francis P. Key who was then chief clerk of the Secretary of State:

> Now it can not be said that because the petitioner, under the direction of the Secretary of State, affixes the Great Seal of the State to official documents, this is her act and that therefore she exercises a portion of the sovereign power of the state. She exercises no independent power or authority. What she does she does not in her own name and by virtue of her own authority, but in his name. Her duties are not prescribed by law; they are prescribed by the Secretary of State, and he may change them when he sees fit. She takes no oath; gives no bond; has no tenure fixed by law; hence we must hold that she is not a public officer.

In the *Weil* case, heretofore cited, four indictments were returned by the Intermediate Court of Kanawha County against a person named therein charging him with having bribed or attempted to bribe two members of the Public Service Commission. A writ of prohibition was sought in the Circuit Court of Kanawha County against the judge of the Intermediate Court upon the ground, among others, that the members of the Public Service Commission were not "executive or judicial officials" as provided by the statute then in effect. It will be recalled that the word "ministerial" was not added to the Act until 1923. The writ was awarded and the State appealed to this Court. The decision was reversed and the rule in prohibition was discharged. This language is contained in the opinion of that case:

Members of the public service commission are included in the descriptive terms of the above statute, "any executive or judicial officer." Those are general terms, intended to include all public officers whose duties are either judicial or executive. The term "executive" is not there limited to the officers enumerated in Sec. 1, Art. VII of the Constitution, as constituting the executive department of the state government, but it is designed to embrace all officers, whether elected or appointed, whose duties pertain to that branch of the government. Being public officers, whose jurisdiction extends over the whole state, it necessarily follows from the apportionment, by the Constitution, of all the powers of government among three departments, denominated therein as the legislative, the executive and the judicial departments, that the duties of all public officials must fall within some one of those three departments. A fourth department, having powers distinct from the three named, could constitutionally exist. That the public service commissioners are not included in the terms, "members of the legislature," must be admitted; that they are included in one or the other of the terms "executive or judicial officers," we think is clear, and it is sufficient, for the purposes, of this writ of error, to class them under the head of executive officers. If their duties are so varied that some of them may properly be classed as executive *or* ministerial, and others as judicial, they could, for purposes of the bribery statute, be classed under either of the two departments. In so far as they are empowered to investigate rates and charges of public service corporations, and to determine their reasonableness or unreasonableness, they would seem to be performing a *quasi* judicial function, while, in ascertaining what is a just rate for services to be rendered by such corporations, and prescribing such rate, as a rule to be obeyed in the future, their action would seem to partake somewhat of a legislative character; and in compelling obedience to its orders, by proper proceedings in court, as Sec. 5 of the act creating it requires it to do, *its duties are ministerial, coming clearly within the functions of the executive department of government.* (Emphasis partially added.)

Article VII, Section 1, of the Constitution of this State provides in pertinent part that the executive department shall consist of a governor, secretary of state, auditor, treasurer,

commissioner of agriculture and attorney general. There can be no doubt but what those officials are included in Code, 61-5-5, as amended, by use of the word "executive." Article VI, Section 1, of the Constitution of this State provides in pertinent part that "[t]he legislative power shall be vested in a senate and house of delegates." The members of those two bodies are clearly governed by the phrase "member of the legislature" in Code, 61-5-5, as amended. Article VIII, Section 1, of the Constitution of this State provides that "[t]he judicial power of the State shall be vested in a supreme court of appeals, in circuit courts and the judges thereof, in such inferior tribunals as are herein authorized and in justices of the peace." All judges of the supreme court of appeals, the circuit judges and judges of courts of limited jurisdiction created by the legislature certainly fall within the meaning of the word "judicial" contained in Code, 61-5-5, as amended. Article VII, Section 8, of the Constitution provides as follows: "The governor shall nominate, and by and with the advice and consent of the senate, (a majority of all the senators elected concurring by yeas and nays) appoint *all officers whose offices are established by this Constitution, or shall be created by law, and whose appointment or election is not otherwise provided for*; and no such officers shall be appointed or elected by the legislature." (Emphasis added.) It is not even contended in this proceeding that the "office" held by the petitioner was established by the State Constitution or created by the legislature or that he was appointed by the governor or approved by the senate. Article IV, Section 8, of the Constitution of this State provides that "[t]he legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed." It is not contended in this proceeding that this petitioner falls within the provisions of that section.

*Blue v. Smith*, 69 W.Va. 761, 72 S.E. 1038, was an original proceeding in mandamus in this Court, the primary issue being whether the legislature had the power under the constitutional provision last quoted to create the office of State Tax

Commissioner. It was contended by the petitioner Blue that the governor had the authority to appoint him tax commissioner inasmuch as such office did not conflict with the powers granted to the constitutional officers of this State. The Court awarded the writ and said:

> Section 8 of article VII prohibits the legislature from appointing, or electing any officers, (but not from creating offices,) and confers upon the governor the right to nominate, and by, and with, the advice and consent of the senate, to appoint, not only officers mentioned in the Constitution, the manner of whose election is not therein provided for, but also, such officers as *"shall be created by law."* This is certainly as clear and express recognition of the right of the legislature to create, by law, other offices than those named in the Constitution, as it is a vesting of power in the governor, acting with the advice of the senate to fill such offices by appointment, after they are created. The legislature, of course, cannot create offices which will conflict with, or curtail the constitutional powers of, any of the offices provided for by the Constitution. But the office of State Tax Commissioner does not do so. That office was created as an aid to the executive department in the administration of the laws respecting the state's revenues. The governor has the power, together with the senate, to fill it, and the governor alone has power to declare it vacant. The State Tax Commissioner is a *subordinate office* in the executive department, the incumbent may be removed by the chief executive at his will. *His powers and duties are purely ministerial,* and do not in any manner conflict with those of any other office created by the Constitution. Our conclusion is that the legislature has the power to create the office of State Tax Commissioner, and that the office is lawfully constituted. (Emphasis partially added.)

Article IV, Section 5, of the Constitution of this State provides, insofar as pertinent, that: "Every person elected or appointed to any office, before proceeding to exercise the authority, or discharge the duties thereof, shall make oath or affirmation that he will support the Constitution of the United States and the Constitution of this State, and that he will faithfully discharge the duties of his said office to the best of his skill and judgment . . . ." In *Brannon v. Perkey,* 127

W.Va. 103, 31 S.E.2d 898, this Court held that Brannon was not entitled to be inducted into the office of city attorney of the City of Weston even though he had been elected to the office since he failed to take the oath of office within the time prescribed by the council of that city. This statement is contained in that opinion: "An official oath of office is prerequisite to the exercise of authority or the discharge of an official duty. Section 5, Article IV, Constitution." In *State v. Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353, this Court held that the provisions of Code, 61-5-5, as amended, are "free from ambiguity and for that reason are not subject to judicial interpretation. When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Furthermore, even if we were to declare the statute to be ambiguous, it is a penal statute, and "it is a firmly settled rule that penal statutes must be strictly construed" against the State. *State ex rel. Workman v. Anderson*, 89 W.Va. 1, 109 S.E. 782. In *Hartigan v. Board of Regents*, 49 W.Va. 14, 38 S.E. 698, this Court held that a professor in the West Virginia University is not a public officer. These statements are contained in the opinion: " 'Office is a public station or employment conferred by the government, and embraces the idea of tenure, duration, emolument and duties.' * * * 'An office is a public charge or employment. The duties of the employment must be continuing, and prescribed by law . . . .' * * * Chief Justice Marshall, in *United States v. Maurice*, 2 Brock. 96, said: 'Although an office is an employment, it does not follow that every employment is an office.' " These statements appear in a 1933 attorney general's opinion written by former Governor Homer A. Holt while he was attorney general:

> No very satisfactory and comprehensive distinction between an "officer" and an "employee" appears in the decision of our supreme court or in the decisions of other courts. Each case must be determined largely on its own merits. However, from the various cases in this as well as in other jurisdictions, a number of criteria appear. No one of these criteria is, perhaps, sufficient alone to be determinative, and the same may be said of various combinations thereof.

In order that a position be an office and not a mere employment it seems necessary that the position be created by the Legislature.

\* \* \*

Other criteria to be considered are: whether the legislature in creating the position designated it an office, whether the qualifications for the appointee are prescribed, and whether the duties, tenure, salary, bond, and oath are prescribed or required, and whether the act constitutes the one occupying the position a representative of the sovereign.

\* \* \*

Considering the fact that the act which creates the position of road supervisor does not require of the road supervisor as such any oath or bond, does not prescribe the duties of the position, the tenure or the salary, and does not delegate to the position the exercise of any of the sovereign powers of government by virtue of such position, but, under Section 14 of the act it would seem that such powers and duties as may be required are to be exercised under the direction of the Commissioner, who shall be responsible for such acts, the position of road supervisor . . . is not an office but is a mere employment. 1933 W. Va. Att'y. Gen. Ann. Rep. 252.

Note that in the attorney general's opinion he referred to a position created by an act of the legislature. In the cases at bar, even that fact is not present.

We believe it significant that in a comparatively short time after the decision of this Court in the heretofore-cited *Blue* case holding that the office of tax commissioner was a "mere ministerial office" that the legislature for the first time in exactly half a century amended Code, 61-5-5, as amended, by inserting therein the word "ministerial." Thus it is clear that the legislature intended thereafter that when an office was "created by law" and filled by appointment by the Governor with the advice and consent of the Senate that such officer should be subject to the bribery provision of that section. Such an office is the Commissioner of Public Highways, formerly known as State Road Commissioner, and certainly the person who holds that office is a "ministerial" officer of this State, his position being identical with the office of tax

commissioner. The petitioner was admittedly only a subdivision head of the department of government presided over by the Road Commissioner who was merely a "ministerial officer." It would take a Sybaritic judiciary to hold that it was the intention of the legislature to include both when it added the term "ministerial" in the Code of 1923.

It is clear that there did not exist by law any such office as "director of office services of the State Road Commission of West Virginia"; that the petitioner was therefore not a de jure officer of the State and furthermore could not possibly have been "an executive and ministerial officer" of the State of West Virginia as provided by Code, 61-5-5, as amended, and as alleged in the indictments.

The only other contention made by respondents is that the petitioner was at least a de facto officer. In MICHIE'S JURIS-PRUDENCE, Volume 15, page 115, under the title "De facto Officers" is this succinct statement, citing *State v. Babb*, 124 W.Va. 428, 20 S.E.2d 683: "To constitute an officer de facto the office must have a de jure existence . . . ." For a full and able discussion of the question of who may be a de facto officer, see *Stowers v. Blackburn*, 141 W.Va. 328, 90 S.E.2d 277.

Why the legislature did not add such language as "and every other employee of the State of West Virginia" to Code, 61-5-5, as amended, we are not advised. Article V, Section 1, of the Constitution of this State provides that: "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others . . . ." If Code, 61-5-5, as amended, is to be amended to include persons employed by the State other than those presently enumerated therein, the power to so amend lies in the legislature, and not in this Court which is forbidden by the Constitution to do so by "construing" or "interpreting" the clear and unambiguous language of that statute.

Inasmuch as the petitioner is not an "executive and ministerial officer of the State of West Virginia," as alleged in the

indictments, and inasmuch as this is a necessary element of the crime purportedly charged, then it logically follows that no crime has actually been charged in either indictment. We have no recourse but to hold that these indictments are void. This Court has long held that where, as in these two cases, an indictment is void by reason that no crime is charged, prohibition is the proper remedy to halt prosecution under such indictment. *State ex rel. McCormick v. Hall*, 150 W.Va. 385, 146 S.E.2d 520; *Workman v. Shaffer*, 112 W.Va. 338, 164 S.E. 299; *State ex rel. Constanzo v. Kindelberger*, 88 W.Va. 131, 106 S.E. 434. For the foregoing reasons, the writs of prohibition are awarded as prayed for.

*Writs awarded.*

CALHOUN, JUDGE, dissenting:

Respectfully, I dissent from the Court's decision embodied in the majority opinion in these two combined cases.

I am not endeavoring to be dramatic when I state that the Court in these cases, with all their grave implications, should be mindful and heedful of the wise admonition contained in Section 20, Article III, of the Constitution of West Virginia which contains the following language: "Free government and the blessings of liberty can be preserved to any people only by a firm adherence to justice, * * * and by a frequent recurrence to fundamental principles." In my opinion, the Court has strayed from fundamental legal principles in relation to the jurisdiction of the trial court, the jurisdiction of this Court and the function and scope of prohibition as a judicial remedy.

For reasons stated hereafter in this dissenting opinion, I believe that the indictments in question are valid on their face; that the Intermediate Court of Kanawha County has jurisdiction to proceed under the indictments; that the question whether the petitioner is "an executive and ministerial officer" is a nonjurisdictional question; and that this Court lacks jurisdiction in these prohibition proceedings to determine nonjurisdictional questions which have not been passed upon by the trial court.

With limited exceptions, this Court has only appellate jurisdiction. Its primary function is to review the actions or judgments of trial courts of record. Even in the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which have not been acted upon and decided by the trial court. *Work v. Rogerson,* 149 W.Va. 493, pt. 11 syl., 142 S.E.2d 188. The reason is, in my view, that this Court, in the exercise of its appellate functions, lacks jurisdiction to "review" nonjurisdictional questions which have not been acted upon and decided by the trial court. Appellate jurisdiction means exactly what the term implies.

This Court's original jurisdiction is conferred by Section 3 of Article VIII of the Constitution by the following language: "It shall have original jurisdiction in cases of habeas corpus, mandamus, and prohibition." Code, 1931, 53-1-1, provides: "The writ of prohibition shall lie * * * when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." The Constitution confers jurisdiction in prohibition as that remedy existed at common law. *State ex rel. City of Huntington v. Lombardo,* 149 W.Va. 671, 677, 143 S.E.2d 535, 540.

Jurisdiction cannot be conferred by an indictment which is null and void because of its failure to allege criminal offense, *State ex rel. McCormick v. Hall,* 150 W.Va. 385, pt. 2 syl., 146 S.E.2d 520; nor by an indictment which is void because it is based on an unconstitutional statute. *State ex rel. Heck's, Inc. v. Gates,* 149 W.Va. 421, 425-26, 141 S.E.2d 369, 374. Conversely, an indictment which is valid on its face confers jurisdiction upon the trial court in which the indictment is pending. Prohibition "does not lie to correct errors or to usurp the functions of a writ of error or certiorari, or of the remedy by appeal." *State ex rel. Cecil v. Knapp,* 143 W.Va. 896, 912, 105 S.E.2d 569, 579.

In these cases, the Court does not hold that the statute upon which the indictments are based is unconstitutional. The indictments are valid on their face and charge offenses in accordance with the language of the statute. They charge that Luther Carson, at the time of the alleged offenses, "was

then and there an executive and ministerial officer of the State of West Virginia." Thereafter it is asserted by videlicet that he held the office of Director of Office Services of the State Road Commission of West Virginia.

Though each indictment expressly alleges that Luther Carson "was then and there an executive and ministerial officer of the State of West Virginia" in full compliance with the language of the statute, the Court, nevertheless, holds that the distinguished judge of the trial court cannot proceed in relation to the two indictments. It must be conceded that the valid indictments conferred jurisdiction on the trial court. It cannot be said, with any degree of reason, that the trial court has exceeded its legitimate powers because this Court has prohibited the trial court from taking any action in relation to the valid indictments. I cannot comprehend how this Court can hold that the trial court has exceeded its legitimate powers when this Court prohibits the trial court from exercising any powers whatsoever pursuant to the indictments. We have stated so many times that jurisdiction in a court includes jurisdiction to err and to decide incorrectly as well as jurisdiction to rule and to decide correctly.

As I shall undertake to state hereafter in this dissenting opinion, the Court has based its decision in these cases upon an alleged failure of proof to sustain the allegations of valid indictments. The Court in this respect, in a wholly unwarranted manner, has invaded the domain of the trial court; usurped functions and jurisdiction which rest solely with that court; anticipated that the trial court may err if permitted to proceed; and has undertaken to decide in these prohibition proceedings questions which this Court properly may decide only in the exercise of its appellate jurisdiction after the trial court has acted upon and decided such questions, correctly or incorrectly, in the exercise of its clear jurisdiction.

In deciding these cases on jurisdictional grounds, the Court has erred in undertaking to decide jurisdictional questions upon alleged facts which are of an extraneous nature, contrary to the allegations of the indictments.

"Prohibition will not lie against an inferior court or a judge thereof to deprive it or him of the right to pass upon the extrinsic facts determinative of jurisdiction." *Downs v. Lazzelle,* 102 W.Va. 663, pt. 1 syl., 136 S.E. 195.

"A court of general jurisdiction, having jurisdiction of the subject matter and (on the face of the record) jurisdiction of the person will not by writ of prohibition be deprived of its right to pass upon the extrinsic facts determining the jurisdiction of the person." *Cunard Steamship Company, Ltd. v. Hudson,* 93 W.Va. 209, syl., 116 S.E. 511.

"If the question of a court's jurisdiction depends upon issues of fact, it has power and jurisdiction to decide them, even though the evidence relied upon to prove the jurisdictional facts is wholly uncontradicted and absolutely conclusive, and it cannot be deprived of its right to do so by prohibition or any other collateral proceeding." *State ex rel. Keeney v. Bland,* 89 W.Va. 600, pt. 5 syl., 109 S.E. 716.

"In determining whether an inferior court has jurisdiction to entertain an indictment, it is only necessary to determine whether the transactions and circumstances therein alleged show that an offense, punishable under the law, has been committed. The technical sufficiency of the indictment will not be inquired into, as if upon a demurrer or motion to quash, to determine jurisdiction." *Weil v. Black,* 76 W.Va. 685, pt. 2 syl., 86 S.E. 666.

For a general discussion of principles stated in the quotations appearing immediately above, see *McConiha v. Guthrie,* 21 W.Va. 134. My views in relation to the lack of jurisdiction of this Court by prohibition to interfere with a trial court in its efforts to proceed, correctly or incorrectly, in the exercise of its jurisdiction have been stated in dissenting opinions in *State ex rel. Turner v. McClure,* 153 W.Va. 855, 173 S.E.2d 167, and *State ex rel. Valley Distributors, Inc. v. Oakley,* 153 W.Va. 94, 168 S.E.2d 532.

The instant cases are predicated on the proposition that Luther Carson was not, in fact, an executive or ministerial officer of the state at the times alleged in the indictments. The indictments allege that, in the position he occupied in

state government, he was "an executive and ministeral officer of the State of West Virginia." In the face of these allegations, this Court cannot take judicial notice that Luther Carson was neither an executive officer nor a ministerial officer of the state. The question whether the allegations of the indictments in this respect can be supported by proof is a matter of trial court jurisdiction. In this collateral attack by prohibition, we must accept the allegations of the indictments at face value.

Whether Luther Carson was or was not an executive or ministerial officer is a matter of defense in the trial court, just as would be a defense of alibi, of mistaken identity or of insanity. A determination of any of such defenses in a manner favorable to the accused would prevent his conviction of the offenses charged. It might be argued that an advance determination by this Court of any of such defenses in accordance with the contention of the accused would have the advantage of avoiding an abortive trial. Whether that is a consummation devoutly to be wished or not, the fact remains that the validity or the invalidity of any such a defense is dependent upon proof of facts dehors the indictment. Not only is this Court lacking in facilities for making a determination of such factual issues, it is also completely lacking in jurisdiction to do so, unless in the exercise of its appellate jurisdiction.

For reasons I have undertaken to state, I would not, in these prohibition proceedings, reach the factual decision the Court has made. In the absence of a proper development of that factual issue in the trial court, I will not undertake to state, in these prohibition proceedings, what the correct answer should be. I will proceed, nevertheless, in an effort to state the basis of my opinion that there are no invariable legal guidelines by which that factual determination can be easily and readily made by any court. In this connection, I note that if the Court is correct in stating in the fourth point of the syllabus that the important position occupied by the accused in state government was not an executive or ministerial office because it was not created "by the legislature", a simple proposition has been belabored and the Court has wasted much effort and language in detailing the indicia of an "office."

The portion of Code, 1931, 61-5-5, which is involved in these cases is stated disjunctively in broad, embracive language as follows: "Any executive, legislative, judicial or ministerial officer, or member of the legislature, * * *." The Reviser's Note following this statute in the official Code, 1931, states that the present statute is a composite of Sections 5, 5a(3) and 5a(4) of Code, 1923. Section 5 dealt with receiving bribes by any "executive, legislative, or judicial officer." Section 5a(3) dealt with demanding or receiving bribes by "any executive or judicial officer of this state." Section 5a(4) dealt with receiving or demanding a bribe by any "member of the legislature."

We must assume that the legislature, in adopting the 1931 official Code, acted deliberately and with a purpose in adding any "ministerial officer" to the category of persons in state government who may be guilty of the criminal offense by demanding, receiving or accepting a bribe. Bearing in mind the disjunctive character in which the present statutory language is stated, it is difficult or impossible to conceive of *any* state officer who would not be embraced by the following language: "Any executive, legislative, judicial * * * officer, or member of the legislature." Why did the legislature add the words, "or ministerial officer"? We are required to assume that the legislature intended to add something to the embracive category which otherwise covered *any* executive, legislative or judicial officer or member of the legislature. We are required to assume that the legislature acted deliberately and for a purpose in adding a new category of positions characterized as any "ministerial officer." The words, "ministerial officer," were obviously designed to embrace some categories of positions in state government *in addition to* any "executive, legislative, judicial * * * officer, or member of the legislature."

We must bear in mind that we are not here concerned with what is meant by "officer," "state officer," "state official" or state "executive officer." We are concerned with the legislative intent in including the words, "ministerial officer," in relation to this particular statute, not in some other connection. We are not here concerned with the meaning of "officer"

or "public officer" under a statute dealing with removal from office as in *Dunbar v. Brazoria County*, Tex. Civ. App., 224 S.W.2d 738. We are not concerned with the question whether the accused is an officer or an employee in relation to workmen's compensation statutes as in *Hutton v. State*, 235 Iowa 52, 16 N.W.2d 18 and *Anderson v. Industrial Commission*, 74 Ohio App. 77, 57 N.E.2d 620. We are not concerned with the question of what is a public office in relation to a statute which prohibits the increase or decrease of a salary during a term of office as in *State ex rel. Key v. Bond*, 94 W.Va. 255, 118 S.E. 276, from which the majority opinion quotes at great length. We are not concerned with a statutory or constitutional provision prohibiting the holding of incompatible offices as in *Martin v. Smith*, 239 Wis. 314, 1 N.W.2d 163. We are concerned in these cases with the meaning of a "ministerial officer" as used in the specific statute which deals with the precise subject of demanding, receiving or accepting bribes, not in every conceivable area of life, but specifically in the performance of the affairs of government.

The majority opinion requires the conclusion that, if a bribe were demanded, received or accepted by the state road commissioner, that would constitute a crime under the statute; but that if the state road commissioner, in order to distribute the burdens of his office, or because of a protracted illness or in order to take a vacation in Florida, or for some other reason, should delegate the performance of the duties and responsibilities of his office to an assistant in his department, for a matter of weeks or a month, the assistant could not be guilty of a crime under the statute if he were to demand, receive or accept a bribe in such circumstances as to constitute a crime if the same acts were performed personally by the state road commissioner. The assistant could demand, receive or accept a bribe with complete impunity. See *United States v. Hartwell*, 73 U.S. (6 Wall.) 385. So far as the public is concerned, the evil is the same whether the forbidden conduct be performed by the state road commissioner personally or by some other person whom he has designated to perform a portion of his official duties.

The factual question presented for decision in this case cannot be determined on the basis of the title or other designation given to the position held by Luther Carson in the performance of important functions in state government. The question must be determined upon a basis of proof of the nature of the position held and the governmental functions performed by him. "It is no defense to an indictment for attempted bribery of a public officer, that he was not a *de jure* officer; his official character can not be thus collaterally assailed; it is sufficient that he was a *de facto* officer." *Weil v. Black*, 76 W.Va. 685, pt. 10 syl., 86 S.E. 666.

These cases clearly present a question of first impression for this Court. There is a paucity of appellate court decisions defining "ministerial officer." So far as I have been able to determine, our attention has not been directed to any reported court decision from any jurisdiction which defines "ministerial officer" as contradistinguished by statute from any "executive, legislative, judicial * * * officer, or member of the legislature."

The principles by which we should be guided in these cases are stated in *Hartigan v. Board of Regents of West Virginia University*, 49 W.Va. 14, 20, 38 S.E. 698, 701, as follows:

"* * * What is a public office? The word is used in so many senses that it is impossible to give a precise definition covering all cases. It depends, not on what we call it, or even on what a statute may incidentally call it, but upon the powers wielded, the functions performed, and other circumstances manifesting the character of the position. *State v. Kennon*, 7 Ohio St. 546."

In *Haynes v. Commonwealth*, 104 Va. 854, 52 S.E. 358, it was held that a police officer of a city was an "executive officer" within the meaning of a statute making it a crime for any person to bribe "any executive, legislative, or judicial officer." In that case the Court quoted with approval the following language from THROOP ON PUBLIC OFFICERS, Section 23:

"The duties imposed upon the officer are supposed to be capable of classification under one of these heads, the legislative, executive, or judicial, and to

pertain accordingly to one of the three departments of government designated by those names. But the classification cannot be very exact, and there are numerous officers who cannot be classified at all under these heads. The reason will be apparent if we name one class as an illustration. Taxing officers perform duties which in strictness are neither executive nor judicial, though in some particulars they must execute the orders of superiors, and others they judge for themselves what is to be done; but sometimes, also, their duties partake of the legislative. All such officers are usually called administrative, while inferior executive officers are designated ministerial."

The general rule is stated in 67 C.J.S., *Officers,* Section 2, pages 99-100, as follows:

"Because of the variety of meanings or shades of meaning in which the terms 'office' and 'officer' may be employed, in determining whether or not a given employment is an office within the meaning of a particular statute or other written law, each case must be determined by a consideration of the particular facts and circumstances involved and of the intention and subject matter of the enactment. The nature of the duties, the particular method in which they are to be performed, the end to be attained, the depositary of the power conferred, and the whole surroundings, must all be considered when the question as to whether a position is a public office or not is to be solved. When the term is used in a statute its meaning must be determined by a construction, not only of the particular section in which it is used, but by the statute as a whole and by other statutes of which the particular one forms a part as being in pari materia; and, also, constitutional provisions should be looked to as aids in deciding the question. Furthermore, the wording of particular statutes may be such that the same position may be held to be an office for one purpose and not for another."

For reasons stated, I would deny the writs of prohibition in these cases.

I am authorized to state that Judge Berry concurs in the views expressed in this dissenting opinion.